EDDIE DEMPSEY V. STATE.

No. 26,912. April 7, 1954.

*Stafford & Alcorn,* by *John M. Stafford,* Kingsville, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for murder; the punishment, 99 years in the penitentiary.

Appellant admittedly killed the deceased, Henry Stewart, by stabbing him with a knife. He testified that he acted in self-defense, believing that the deceased, who he knew had recently cut his nephew's throat, had a pistol or knife and was about to attack him.

Appellant filed an application for a suspended sentence and testified as a witness in his own behalf. His reputation was therefore put in issue. Under well established rules of evidence the state was entitled to show that his general reputation as a peaceable and law abiding citizen was bad, and also to prove recent convictions for felony offenses or offenses involving moral turpitude, if such proof was available.

But collateral acts of misconduct not resulting in charges filed (and under the present statute, Art. 732(a) V.A.C.C.P., in conviction), or convictions for misdemeanors not involving moral turpitude are not generally admissible. Pena v. State, 157 Tex. Cr. Rep. 63, 246 S.W. 2d 478; Mitchell v. State, 156 Tex. Cr. Rep. 128, 239 S.W. 2d 384; Clements v. State, 145 Tex. Cr. Rep. 428, 169 S.W. 2d 190.

The state offered no proof of the bad general reputation of appellant. But on his cross-examination, appellant having admitted that he had the knife in his pocket, the state was per-

mitted to show that after he had had "previous knifing trouble" the sheriff ordered appellant not to carry a knife and he promised he would not.

Also appellant was asked and admitted that he had been finally charged, convicted and assessed a two year term for aggravated assault upon a woman in 1950, on a plea of guilty. He was asked, also, whether another aggravated assault in 1952, "because you seriously cut another person with a knife, is still pending on the records of this county isn't it, because the trial was interrupted when you committed this murder of Henry Stewart?"

And appellant was asked if the woman almost died from his cutting her (in 1950) and "if your knife had been a little more true then you might have been up for murder then instead of now?"

Objections were offered to such testimony and after the evidence was admitted appellant asked that the jury be withdrawn, and in their absence moved for a mistrial because of such impeachment by proof of such collateral offenses.

The evidence as to the pending charge of an aggravated assault against appellant was inadmissible under Art. 732(a) V.A.C.C.P. Also the state should not have been permitted to inquire as to the details of the assaults by asking "you seriously cut another person" in connection with one charge, and in the other "this woman almost died." Finch v. State, 103 Tex. Cr. Rep. 212, 280 S.W. 597.

Further, this court has not held that the offense of aggravated assault is an offense involving moral turpitude because committed upon a female. We have held that an aggravated assault by an adult male upon his wife involves moral turpitude. Lloyd v. State, 157 Tex. Cr. Rep. 43, 204 S.W. 2d 633; Stewart v. State, 100 Tex. Cr. Rep. 566, 272 S.W. 202.

Appellant complains that he was not permitted to attack the character of the deceased and show his general reputation for violence and certain previous acts of misconduct.

While appellant was testifying and before the issue of self-defense had been raised or any act of aggression on the part of the deceased had been shown or suggested by the evidence, he was

asked by his counsel whether, when he first met the deceased in 1951, he heard anything about his character. Appellant was not permitted to answer this question, the court ruling that he would have to "lay a foundation."

Next appellant attempted to testify as to what a switchman told him in Raymondville about the deceased, but the court ruled that some act of aggression or of violence be first shown.

Appellant contends that the trial court was in error, the evidence being admissible and relevant on the question of who was the aggressor; that is that the evidence should have been admitted, though the facts were not known or communicated to appellant, on the question of what the deceased probably did and not what appellant may have thought he was doing.

Appellant was later asked by his counsel "do you know anything about the deceased with reference to being a violent man?" The state objected that the question was not proper and the defense should be limited to proof of the general reputation of the deceased in regard to violence.

Just how appellant could testify to acts unknown to him at the time of the homicide without violating the hearsay rule is not apparent.

The defense may offer testimony as to any specific act of violence or misconduct which evidences the violent character of the deceased under the following conditions:

If offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger, it must further appear that the acts of violence or misconduct were known to the defendant at the time of the homicide.

But if offered for the purpose of showing that the deceased was in fact the aggressor (not that the defendant thought the deceased was making or about to make an attack) the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide.

Before any evidence of deceased's character for violence becomes admissible, however, there must be evidence of some act of aggresison by the deceased which the character tends

to explain (such as drawing a gun or reaching for a pocket where one is usually carried).

At the time the foregoing testimony was offered, there was no evidence before the jury of any act of the deceased which was subject to being explained by the character of the deceased.

After the above mentioned evidence had been rejected, appellant testified that a bottle was thrown; that the deceased was right on him; that he was in fear for his life because he knew the deceased had cut his nephew; that he heard the deceased mumbling and he then hit him with the dagger. He also testified that he thought the deceased had a knife or pistol; that he knew he had recently cut his nephew's throat; that he was afraid of the deceased because "he kept slipping up on me"; "he came mumbling"; that when he cut the deceased he feared that his life was in danger.

Appellant also introduced in evidence his written confession about which he had been interrogated by the attorney for the state. In the confession he said "When I saw that he had his right hand in his pocket, I immediately pulled a dagger which I had in my hip pocket and stabbed him - - -"; that after the stabbing a bottle was thrown which just missed his head.

Appellant then offered the witness R. L. Wood, Deputy Sheriff of Willacy County, for the purpose of showing the deceased had a reputation of being a violent man and to testify to various acts of violence on his part, but the court sustained the state's objection and ruled that in view of appellant having testified that there had been no previous trouble between him and the deceased, no previous acts could have caused him to have an apprehension of death or serious bodily harm.

For the purpose of appellant's bill of exceptions, Wood testified in the absence of the jury and produced a list of prior convictions and charges against the deceased in Willacy County, including a fine of $23 for disturbing the peace (being drunk and fighting) on October 7, 1946; a fine of $18 for fighting (with his wife) June 10, 1951; a fine of $14 for disturbing the peace (fighting with his wife) July 31, 1952; a fine of $400 for aggravated assault on his nephew—($50 paid on fine was returned to wife after his death).

Wood did not testify to the general reputation of the de-

ceased as to violence, or testify that his reputation as a law abiding citizen was bad.

Appellant testified that he knew the deceased "had just cut his nephew's throat." He should have been permitted to prove as a fact such act of violence.

It is not shown that he had heard of the three convictions for fighting and drunkenness (disturbing the peace).

Though not predicating reversal thereon, we express the view that these convictions were also admissible upon the question of what the deceased actually did or was doing at the time he was killed.

The error in admitting the foregoing testimony as to prior misconduct, charges and convictions of appellant, and the details thereof, requires that the conviction be set aside. Upon another trial appellant should be permitted to testify to any act of violence or conviction therefor against the deceased of which he had knowledge at the time of the homicide, and to any information or report of such act or conviction which had been communicated or made known to him before the killing, this evidence being admissible upon the question of his having a reasonable apprehension of death or serious bodily injury.

"The defendant's knowledge or belief of the character or disposition of the deceased" is a proper matter for consideration of the jury in determining whether appellant acted upon a reasonable apprehension or fear of death or serious bodily injury when he killed the deceased, and the court's charge so instructed the jury. It follows that appellant should have been permitted to testify as to such knowledge or belief and to establish if he could the factual basis for such belief.

The judgment is reversed and the cause is remanded.