**Alan Joe JENKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61258.**

Court of Criminal Appeals of Texas,
Panel No. 2.

Nov. 25, 1981.

Rehearing Denied Jan. 6, 1982.

J. L. Buddy Curry, Lubbock, for appellant.

John T. Montford, Dist. Atty. and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and W. C. DAVIS and TOM DAVIS, JJ.

### OPINION

ONION, Presiding Justice.

This is an appeal from a conviction for murder. Punishment was assessed by the court at twelve (12) years' imprisonment following the guilty verdict by the jury.

In his sole ground of error appellant contends the court reversibly erred in refusing to permit him to present testimony of a specific act of violence which was evidence of the violent character of the deceased. "The testimony sought to be introduced by appellant was for the purpose of showing that the deceased was in fact the aggressor in this confrontation."

The evidence is undisputed that the appellant shot and killed Robert Humphries at Sam's Place in Lubbock in the early morning hours of April 23, 1978. The cause of death was shown to be a bullet wound to the chest which went through the lungs causing massive bleeding. The body had two bullet wounds.

The evidence shows that the appellant did not know the deceased before the occasion in question. The State's theory was that the appellant was the aggressor.

Jesse Miller, an employee at Sam's Place, heard the appellant and the deceased talking loud. He was in a back room. He then heard the appellant say, "Nigger, I want you to stop 'fooling'[1] with me." He then heard two shots, and later saw the deceased being carried out.

He testified that he did not see the deceased with a gun that night and did not observe a gun on the floor after the shooting. He did testify that about two weeks

---

1. The witness Miller related the appellant didn't actually use "fooling" but a bad word.

before he had kept a .25 cal. pistol for the deceased for a short time.

Willie Hunter heard the appellant and the deceased talking loud and saw the deceased leaning on the counter with a Miller's beer in one hand. He related the appellant left the club and came back in and asked the deceased "What was that shit you was talking about?" Hunter related the appellant then fired three times and ran. He did not see the deceased with a gun and observed nothing in his hands except the Miller's beer.

Jackie Mathis did not see any fight or hear any words between the deceased and the appellant. He did not see the deceased with a gun or any kind of weapon, and only observed the deceased leaning on the counter with a beer in his hand and "doing nothing" with the other. Mathis saw the appellant leave the club and go to his car. The appellant returned, said something which the witness could not understand, and then began shooting.

Clifford Joushliⱼ saw the appellant shoot the deceased and he heard three shots. He did not see any gun after the shooting.

The defense then called Su⸗ Mayes, who was living with the appellant at the time but admitted she was not legally married to him,[2] testified that she arrived at Sam's Place with the appellant, that she immediately went to the restroom, and when she came out she stopped by the cigarette machine. The deceased Humphries approached her and said, "I want to talk to you," and Mayes replied, "I don't want to talk to you." The deceased then accused Mayes of "trying to act like a white woman" and she demurred. Mayes started walking towards the appellant and the deceased stated, "You still don't have to talk to me" and followed her. When she reached the appellant, she asked to leave. The deceased approached and stated to the appellant, "Nigger, I'll shoot you." Mayes related appellant replied, "Man, I don't know you" and "Why are you bothering

me?" Later she heard appellant say, "Man, leave me alone." Then she and the appellant started to depart and the deceased said, "Nigger, I'm still going to shoot you" and put his hand in his pocket. Mayes told the appellant the deceased was acting like he was going to do "something." She reached into her purse and gave the appellant a .22 cal. revolver. She left the building and drove the car home without waiting for the appellant. She retrieved the gun from the appellant after he arrived home that night and pawned it about three weeks before trial.

Appellant testified he went to Sam's Place with Sue, that she went to the restroom and he talked with an employee (Miller) and then to two girls. He related during this latter conversation he heard the deceased, whom he never had seen before, arguing with Sue. He heard Sue tell the deceased, "There is my man right there," and heard the deceased say, "I don't care—you are trying to act like a white woman." Appellant observed Sue approach him followed by the deceased, who came forward and leaned on a counter and stated, "Nigger, I shoot you" and put his hand in his pocket. Appellant replied, "I shoot you, too." Appellant related he then walked in front of the deceased who had his hand in his pocket and when he got to the door Sue gave him a gun and he turned and shot three times at the deceased at close range.

After Sue Mayes testified the appellant sought to offer the testimony of attorney Tom Purdon and Carlos Luera to show the deceased's prior conviction for assault with intent to murder for the purpose of showing that the deceased was in fact the aggressor. When the court refused to permit such testimony before the jury, the appellant perfected a bill of exception. The bill showed the deceased had been convicted on a guilty plea of assault with intent to murder Luera in 1974. Luera testified he had been shot in the neck while driving a car by a person in another car whom he did not know. This

2. We reject without further evidence the assertion in appellant's brief that Sue Mayes was his wife.

same testimony was re-offered after the appellant testified. The court charged on the defense of self-defense.

In *Dempsey v. State,* 159 Tex.Cr.App. 602, 266 S.W.2d 875 (1954), this court, speaking through Judge Woodley, said:

"The defense may offer testimony as to any specific act of violence or misconduct which evidences the violent character of the deceased under the following conditions:

"If offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger, it must further appear that the acts of violence or misconduct were known to the defendant at the time of the homicide.

"But if offered for the purpose of showing that the deceased was in fact the aggressor (not that the defendant thought that the deceased was making or about to make an attack) the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide.

"Before any evidence of deceased's character for violence becomes admissible, however, there must be evidence of some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried)."

In the instant case it cannot be argued that there was an absence of any evidence of an act of aggression on the part of the deceased so as to render inapplicable the rule in *Dempsey.* There was evidence the deceased sought to engage Sue Mayes in conversation and when she refused he began to argue with her, and followed her to where appellant was after she told the deceased, "There is my man right there." Thereafter the deceased threatened to shoot the appellant and put his hand in his pants pocket. The *Dempsey* rule is thus applicable.

Appellant admits the evidence offered was not admissible under the first prong of the *Dempsey* rule as any acts of violence on the part of the deceased were unknown to him at the time. He does claim, however, that the evidence was admissible under the second prong of the *Dempsey* rule.

*Dempsey* was reversed because of the improper admission as to the prior misconduct charges and convictions of the defendant (not the deceased) and details thereof. The court observed that in the event of a retrial the court should honor the first prong of the *Dempsey* rule mentioned above and admit any act of violence or conviction of which the accused had knowledge at the time of the homicide. The court also noted convictions of the deceased offered in the perfection of the bill of exception and stated:

"Though not predicating reversal thereon, we express the view that these convictions were also admissible upon the question of what the deceased actually did or was doing at the time he was killed."

*Lewis v. State,* 463 S.W.2d 186 (Tex.Cr. App.1971), involved a murder conviction where the reversal was based upon a violation of the second prong of the *Dempsey* rule. There the court wrote:

"Applied to the facts of this case, the question is: Did the appellant's statement, in her confession, that the deceased hit her first, constitute evidence of an act of aggression which could be explained by the character of the deceased? To put it another way, was the deceased, at the time of the homicide, shown to be manifesting an intention to inflict violence on the appellant?

"The statement that the deceased hit the appellant first, plus the evidence that they were quarrelling at the time, show sufficient violence on the part of the deceased to make the second rule applicable. The appellant was entitled to introduce the evidence to show that the deceased was the aggressor. The court's failure to admit this testimony was prejudicial to the appellant and constitutes reversible error."

See also *Beecham v. State,* 580 S.W.2d 588 (Tex.Cr.App.1979); *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App.1972). See also

*Lowe v. State*, 612 S.W.2d 579 (Tex.Cr.App. 1981); *Mahaffey v. State*, 471 S.W.2d 801, 809 (Tex.Cr.App.1971) (dissenting opinion).

For the refusal of the court to permit the appellant to introduce the evidence reflected by the bill of exception to show the deceased was in fact the aggressor, the judgment is reversed and the cause remanded.