**Charles Earl BARNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–84–098–CR.

Court of Appeals of Texas, Beaumont.

Sept. 25, 1985.

Willard Hall, Jr., Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

OPINION

BURGESS, Justice.

Charles Earl Barnes was indicted for the murder of Paul Cormier. He plead "not guilty" to a jury and they found him guilty of voluntary manslaughter. The jury then assessed appellant's punishment at 20 years confinement in the Texas Department of Corrections and a fine of $10,000.00. Appellant brings forth seven grounds of error.

■ The first five grounds of error center around the following portion of testimony:

"[DEFENSE COUNSEL]: Mr. B., during the ___ or were you familiar with a man named Paul Cormier during his lifetime?

"[WITNESS]: That's correct.

"[DEFENSE COUNSEL]: And how long had you known him at the time that he died?

"[WITNESS]: Well, I had been knowing him for a long time, at that point in time, because we went to school together. Well, we weren't in the same class, but we were in the same high school.

"[DEFENSE COUNSEL]: Uh-huh.

"[WITNESS]: And I had been seeing him around and different clubs and just in the same neighborhood. We ran across one another, and knew of him.

"[DEFENSE COUNSEL]: I see.

"[WITNESS]: Uh-huh.

"[DEFENSE COUNSEL]: Are you familiar with during his lifetime whether he was peaceful, law-abiding citizen or otherwise?

"[WITNESS]: Well, I know that I was a victim of ___ being shot by him?

"[DEFENSE COUNSEL]: Is that correct?

"[WITNESS]: That's correct. That's correct.

"[DEFENSE COUNSEL]: Reputation, you know, is based on what one thinks of you, based on your conduct and what other people say your conduct is. Was his reputation good or bad?

"[WITNESS]: I would say it was bad, from the people that had talked to me about him, and after he shot me and people that came and wanted me to do something to prosecute him, and people came to me and wanted to take up for me, and this type of thing, because they knew he had shot other folks.

"[DEFENSE COUNSEL]: Uh-huh.

"[WITNESS]: So, I would say it was a bad reputation.

"[DEFENSE COUNSEL]: All right. Did you do anything to provoke his shooting you?

"[WITNESS]: Well, the way that the incident happened___

"[STATE'S ATTORNEY]: Your Honor, at this time, since there has been no showing that the Defendant, himself, is aware of the facts Mr. B. is testifying to, I don't believe it's admissible.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: I don't believe you are quite answering my question, Mr. B. Without going into the details of how he happened to shoot you, my question was: Did you do anything to provoke him into shooting you?

"[STATE'S ATTORNEY]: Again, Your Honor, I object. He's going into specific details of the offense.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: All right. Your witness.

## CROSS–EXAMINATION

"[STATE'S ATTORNEY]: Mr. B., let me ask you one question. You have stated that Mr. Cormier and you were in an altercation and you were shot and Mr. Cormier was the one that shot you, is that correct?

"[WITNESS]: Uh...

"[STATE'S ATTORNEY]: Yes, or no, sir.

"[WITNESS]: That's correct.

"[STATE'S ATTORNEY]: Did Mr. Cormier receive probation for that?

"[WITNESS]: That's correct, he did.

"[STATE'S ATTORNEY]: Thank you.

## REDIRECT EXAMINATION

"[DEFENSE COUNSEL]: Did you go along with it?

"[WITNESS]: That's correct.

"[DEFENSE COUNSEL]: In other words, your opinion ... (interrupted)

"[STATE'S ATTORNEY]: I object. This is leading, "in other words".

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: Okay. That's all.

"THE COURT: Anything further?

"[DEFENSE COUNSEL]: No."

Appellant's complaints are the trial court erred in sustaining the state's objections because (1) it prohibited the appellant from obtaining testimony pertaining to specific acts of misconduct by the deceased, (2) it prohibited appellant from obtaining testimony which would have shed light on a central issue in the case, to wit: As between appellant and the deceased, who was the aggressor, (3) the excluded testimony consisted of evidence to make the previous testified to act (the shooting of the witness by the deceased) fully understood, (4) the state had not objected to the defense eliciting testimony that the witness had been shot by the deceased and (5) the state had allowed the "door to be opened" by not making a timely objection.

Appellant's appellate counsel does an excellent job in analyzing and discussing the "Dempsey Rule", *Dempsey v. State*, 159 Tex.Cr.R. 602, 266 S.W.2d 875 (App.1954). In looking at the testimony, it appears the trial counsel was eliciting testimony about the deceased's reputation for being a peaceful and law-abiding citizen. Not once did trial counsel advise the court he was offering the testimony in accordance with the "Dempsey Rule". Not once did he advise the court he felt the state had "opened the door". The trial counsel did not seek to offer the excluded testimony in a bill of exception. In essence, it would appear that trial counsel was satisfied with the manner in which the testimony was before the jury. Even if the excluded testimony[1] was relevant and admissible, we cannot conclude, in light of the entire record that the trial court's exclusion constitutes reversible error. *Parrish v. State*, 614 S.W.2d 161 (Tex.Crim.App.1981). Grounds of error numbers one through five are overruled.

Ground of error number six states:

"The circumstantial evidence is insufficient to sustain the conviction for voluntary manslaughter because the State failed to exclude the outstanding, reason-

---

**1.** We need not reach the issue of the propriety of the "bill of exception" or the "bystanders' bill".

able hypothesis that Appellant was acting in self-defense in his shooting of the victim, Cormier."

This was not a circumstantial evidence case. The appellant admitted he shot and killed the deceased. The jury was properly charged on the issue of self-defense, both in defining same and placing the burden of proof. Ground of error number six is overruled.

Ground of error number seven states:

"The conviction for voluntary manslaughter cannot stand for the reason that the jury had impliedly found, according to the charge, either a reasonable doubt existed as to one or more of the elements of murder, which also are elements of voluntary manslaughter, or that defendant did not commit one or more elements of murder, which are also elements of voluntary manslaughter."

The pertinent part of the charge states:

"Now if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about July 26, 1982, the defendant Charles Earl Barnes intentionally or knowingly caused the death of Paul A. Cormier by shooting him with a gun, you shall find the defendant guilty of the offense of Murder, as alleged in the indictment.

Unless you so find, or if you have a reasonable doubt thereof, you shall acquit the defendant of Murder and next consider if the defendant committed the lesser included offense of Voluntary Manslaughter."

The charge then goes on to define the additional elements of Voluntary Manslaughter and gives the charging paragraph on Voluntary Manslaughter. This type of charge was exactly the type in *Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim.App.1983) and *Jenkins v. State*, Nos. 64,000–64,004 (Tex.Crim.App., February 16, 1983) (not yet reported). *Cobarrubio, supra*, held that such a charge was error since it had been objected to. *Jenkins, supra*,

held that such a charge was fundamental error and need not be objected to. These cases would be controlling if were not for *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984). Now that we no longer have automatic fundamental error in a charge, we must look to see if the error is so egregious and creates such harm that it deprives the accused of a fair and impartial trial. Looking to the charge as a whole, we do not so find.

Appellant next argues that when the jury did not find him guilty of murder they impliedly had a reasonable doubt as to one or more of the elements of murder and thus since the issue of sudden passion was not in the initial charging paragraph, the jury was thus precluded from deciding the same issues in the voluntary manslaughter portion of the charge. Again looking to the mandates of *Almanza, supra*, we believe the charge was fairly presented to the jury.[2] We find no reversible error. Ground of error number seven is overruled. The judgment of the trial court is affirmed.

Affirmed.

---

**2.** It more correctly should have been presented as per *Cobarrubio, supra*.