Roberto CHAPA, Appellant,

v.

The STATE of Texas, State.

No. 2–85–081–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 5, 1986.

Zachry, Kearney, Hill, Shaw, Beatty & Butcher, Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Stanton, Asst. Dist. Atty., Fort Worth, for the State.

Before FENDER, C.J., and ASHWORTH and HILL, JJ.

## OPINION

ASHWORTH, Justice.

A jury found appellant guilty of murder. See TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974). Punishment was assessed by the jury at ninety years confinement.

We reverse and remand.

The evidence is uncontradicted that appellant shot the deceased, Albert Padilla, five times on January 23, 1983. The accounts given by witnesses to the shooting, however, vary a great deal.

According to the State's witnesses, Albert and his family were seated in a booth at the Rainbow Lounge, where they were drinking and dancing, from about 6:30 p.m. until 11:30 p.m., the time of the shooting. During the evening appellant had been standing at the bar and staring at the family group. At one point appellant approached the family table, drew a gun, and pointed it at the head of Albert's son-in-law. Appellant called the son-in-law various names, but the confrontation ended without incident. Later that evening, as the disc jockey announced the last dance, appellant shot the deceased. Appellant then chased the son-in-law under a pool table and fired several shots at him. The State's evidence was that the attack was completely unprovoked and that neither the deceased nor any of his companions had a weapon.

Appellant and the other defense witnesses testified that Albert had been acting and talking like a "macho man" all night and had been calling appellant derogatory names. Albert stared at appellant in a provocative way, threatened him by displaying a handgun, and at one time deliberately bumped into appellant. Appellant went to Albert's table and tried to settle things, but Albert's brother drew a gun. Appellant then returned to the bar where his friends told him that the "Padilla boys" had a reputation for being troublemakers. Appellant then decided to go home, but when he got out to the parking lot he decided to get his gun and make sure that his friends were okay. When appellant

returned, Albert again began calling him names. Albert called appellant a name and began rising from his chair while reaching back as if to draw a gun. Albert's brother already had a gun in his hand. Fearing for his life, appellant shot Albert and then walked over and disarmed Albert's brother.

The appellant claimed self-defense at trial. *See* TEX.PENAL CODE ANN. sec. 9.31 (Vernon 1974). It was therefore essential for the appellant to demonstrate that the deceased was the aggressor. At trial the appellant called two witnesses, Antonio Gomez and Linda Aleman, to testify to the deceased's general reputation for violence and for carrying a gun; these witnesses were not asked to testify regarding specific acts of violence on the part of the deceased. The trial court excluded this proffered testimony and a bill of exceptions was made.

■ By his first two grounds of error appellant argues that it was reversible error for the trial court to exclude the reputation testimony. We agree.

■ The general reputation of the deceased as a violent and dangerous character is admissible in a homicide case where there is some act of aggression by the deceased which gives rise to a claim of self-defense on the part of the defendant. *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Crim.App.1983); *Beecham v. State*, 580 S.W.2d 588, 590 (Tex.Crim.App.1979). There must be evidence of some act of aggression which the character tends to explain, such as drawing a gun or reaching for a pocket where one is usually carried. *Lewis v. State*, 463 S.W.2d 186, 188 (Tex. Crim.App.1971); *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (1954). If offered to show the reasonableness of the defendant's claim of apprehension of danger, it must be shown that the reputation was known to the defendant at the time of the homicide; if offered to show that the deceased was in fact the aggressor, the witness must know, but the defendant need not have known of the reputation at the time of the homicide. *Thompson*, 659

S.W.2d at 653–54; *Beecham*, 580 S.W.2d at 590.

In the case at bar, the appellant testified that the deceased was reaching back as if to draw a gun. This evidence of aggression is sufficient to support a claim of self-defense. The excluded testimony was offered to show that the deceased was the aggressor in the conflict. It was error for the trial court to exclude the testimony pertaining to the reputation for violence of the deceased. Such testimony being an integral element in the appellant's claim of self-defense, its exclusion was reversible error. *See Jenkins v. State*, 625 S.W.2d 324, 327 (Tex.Crim.App.1981).

■ The State acknowledges the validity of the general rule regarding admissibility, but argues that the proper predicate was never laid to make reputation testimony admissible in the instant case. Specifically, the State contends that it was proper to exclude the proffered testimony because there was no showing by appellant that the testimony that the deceased had a reputation for violence was not based upon the events occurring on the night of the homicide.

Although we agree with the State that the deceased's reputation for violence is only probative to the extent that he had such a reputation prior to January 23, 1983, we cannot agree that the appellant had the burden of proving a negative. In other words, the appellant did not have to show that the deceased's reputation *did not* arise out of the incident in question; rather, the State must prove, either through cross-examination or on voir dire, that the reputation testimony is not properly admissible. *See, e.g., Beecham*, 580 S.W.2d at 590. We sustain appellant's first two grounds of error.

We have examined appellant's third ground of error dealing with the court's charge to the jury, and his fourth ground of error which concerns jury argument, and have found them both to be without merit.

The judgment is reversed and the cause remanded to the trial court for a new trial.