WARNER V. H.E.B. 






NO. 10-90-133-CV


IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â RICHARD WARNER, ET UX,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â H.E. BUTT GROCERY COMPANY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From the 13th Judicial District Court
Navarro County, Texas
Trial Court # 691-87

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â This is an appeal by the Warners from a take-nothing judgment entered after a jury verdict
in a slip-and-fall case against H. E. Butt Grocery Company (H.E.B.). The Warners assert four
points of error, but we find the first point is dispositive of the case. We will reverse and the
remand the judgment.
Â Â Â Â Â Â Â Â Â Â The Warners pled that Mrs. Warner slipped and fell in a small pool of liquid substance on
the floor of H.E.B. She alleged that H.E.B. was negligent on two theories. First, that H.E.B.
failed to adequately maintain the floors of the store in question in a safe condition, and second,
that H.E.B. failed to pre-bag the chill-packed chicken to reduce the amount of chicken blood that
dripped to the floor of the store.
Â Â Â Â Â Â Â Â Â Â The court's charge erroneously submitted the negligence issue in five separate questions
which did not include the Warners' second theory of negligence. The jury was instructed not to
answer each of the second through fifth questions unless they answered the preceding question in
the affirmative. In response to Question 1, the jury found that the liquid substance on the floor
of the store posed an unreasonable risk of harm to Mrs. Warner. Question 2 asked the jury the
following question:
Did the defendant know or should defendant reasonably have known that there was
liquid substance on the floor of its store on the occasion in question?

The jury answered this question, "No". Pursuant to the trial court's erroneous instruction, the
jury did not answer questions 3, 4 or 5 which asked whether H.E.B. failed to reduce or eliminate
the risk in question, whether such failure constituted negligence, and whether such negligence was
a proximate cause of Mrs. Warner's injuries. In answering the damage question, the jury found
Mrs. Warner had suffered $156,500 worth of injuries, but the charge submitted by the trial court
prevented the jury from awarding damages based upon Mrs. Warner's second theory of recovery,
that is, the failure of H.E.B. to pre-bag the chicken to prevent leakage of chicken blood throughout
the store, which resulted in foreseeable harm through a course of conduct or method of operation. 
See Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983).
Â Â Â Â Â Â Â Â Â Â Rule 277 of the Texas Rules of Civil Procedure, which controls submission of issues to a
jury, is unambiguous in directing broad-form submission. See Tex. R. Civ. P. 277. The text of
Rule 277 mandates that "[i]n all jury cases the court shall, whenever feasible, submit the cause
upon broad-form questions." Id. (emphasis added). This language of the rule requires that broad-form submission be used in any or every instance in which it is capable of being accomplished. 
See Texas Department of Human Services v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). In E.B.,
the Supreme Court said, "[t]he rule unequivocally requires broad-form submission whenever
feasible. Unless extraordinary circumstances exist, a court must submit such broad-form
questions." Id. (emphasis added). The Supreme Court went on to say that the controlling issue
in E.B. was whether the parent-child relationship between the parent and two children should be
terminated and not upon what specific ground the jury based their decision. Here, the controlling
issue is whether H.E.B. was negligent and not upon which theory of negligence the jury based
their decision.
Â Â Â Â Â Â Â Â Â Â When reviewing errors in a charge we employ the abuse-of-discretion standard. Id. The
trial court abuses its discretion when it acts without reference to any guiding principle. Id. It is
now clear that the rule requires broad-form submission and eliminates the trial court's discretion
unless extraordinary circumstances exist. Id. In this matter the trial court did not follow the
language of Rule 277. Therefore, since the alternative theory of negligence was supported by the
pleadings and evidence, the negligence issue could have been submitted in broad form. We find
the trial court erred when it submitted the charge to the jury in the form of special questions and
not in broad form.
Â Â Â Â Â Â Â Â Â Â Now we must analyze the error under Rule 81(b)(1) of the Texas Rules of Appellate
Procedure. See Tex. R. App. P. 81(b)(1). The rule provides that a judgment shall not be reversed
unless we are of the opinion that the error was such a denial of the rights of the Appellant as was
reasonably calculated to cause and probably did cause rendition of an improper judgment. Id. 
Because the court submitted the charge in such a form that denied the Warners their second theory
of liability, it is our opinion that their rights were denied under Rule 278 of the Texas Rules of
Civil Procedure. See Tex. R. Civ. P. 278. The denial of their right to have all theories of
liability submitted was reasonably calculated to cause and probably did cause rendition of an
improper judgment. The judgment of the trial court is reversed and the cause remanded.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Reversed and remanded
Opinion delivered and filed May 2, 1991
Publish 



t use deadly force unless deadly force was in fact used against him
first.Ô  Such a statement would appear to be contrary to applicable law.  See
id.Â  However, EvansÂs paraphrase of the complained-of statements is not
entirely accurate and appears to be taken out of context.

Â Â Â Â Â Â Â Â Â Â Â  It
is improper for a prosecutor to misstate the law.Â  See Whiting v. State,
797 S.W.2d 45, 48 (Tex. Crim. App. 1990); Abbott v. State, 196 S.W.3d 334,
343 (Tex. App.ÂWaco 2006, pet. refÂd).Â  However, when evaluating the propriety
of the challenged statement, we must consider the context in which it was
made.Â  See Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997); Davis
v. State, 268 S.W.3d 683, 694 (Tex. App.ÂFort Worth 2008, pet. refÂd); see
also Gardner v. State, No. AP-75,582, 2009 WL 3365652, at *17 (Tex. Crim.
App. Oct. 21, 2009) (ÂAlthough it is possible to construe this argument as
being improper when taken out of its full context, the prosecutorÂs argument is
more naturally interpreted as a permissible one.Â).

Â Â Â Â Â Â Â Â Â Â Â  Evans
first complains of the prosecutorÂs explanation of the law concerning the use
of deadly force during voir dire.Â  He cites as examples the following:

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
ÂYou can only
respond to force with forceÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Âthe law
specifically says the use of deadly force is not justified if all that is
threatened is forceÂ

Â 

Â·Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Âthe law says if a
person is under attack by the use of force, not deadly force, you can respond
with force, but not deadly force.Â  Okay.Â  In other words, thereÂs a
proportionate, proportionality, I donÂt know what the right word would be, but
you canÂt use deadly force to repel an attack thatÂs only forceÂ

Â 

At first blush,
these statements might be construed as assertions that a person may act in
self-defense only when actual force is used against him (and can use deadly
force in self-defense only when deadly force is actually used against him).

Â Â Â Â Â Â Â Â Â Â Â  However,
when read in context, it appears that the prosecutor was attempting to explain
the difference between the justified use of deadly force in self-defense and
the justified use of force less than deadly in self-defense.Â  Regardless of
whether a person faces an actual or apparent threat, sections 9.31 and 9.32
contain a proportionality requirement with regard to the magnitude of force
which the person is legally justified to employ.Â  See Tidmore v.
State, 976 S.W.2d 724, 728-29 (Tex. App.ÂTyler 1998, pet. refÂd) (ÂThe
amount of force used must be in proportion to the force encountered.Â); accord
McBride v. State, No. 13-04-00575-CR, 2006 WL 1965822, at *5 (Tex. App.ÂCorpus Christi July 13,
2006, pet. refÂd) (not designated for publication); Seibert v. State,
No. 05-03-01131-CR, 2004 WL 2804795, at *6 (Tex. App.ÂDallas Nov. 30, 2004,
pet. refÂd) (not designated for publication).Â  ÂDeadly force is not immediately necessary if a
reasonable person in the position of the defendant would use some available
nondeadly method of self-defense.Â  In such circumstances, a defendant's use of
deadly force would not be justified.ÂÂ  Tidmore, 976 S.W.2d at 729; accord
McBride, 2006 WL 1965822, at *5; Seibert, 2004 WL 2804795, at *6.

Â Â Â Â Â Â Â Â Â Â Â  Later
in voir dire after the statutory definitions had been read to the venire panel
and discussed further, a veniremember commented (apparently in his own effort
to explain EvansÂs objection):

This is the reason for his objection.Â 
ThatÂs why he keeps standing up and saying he keeps leaving out the word
perceived attempted force or some such, because if you perceive youÂre going to
be met with force, heÂs probably going to argue that his client has the right
to stop that force from happening.

Â 

The prosecutor
agreed that the issue of self-defense must be viewed from Âthe defendantÂs
standpointÂ but re-emphasized that his focus was on the magnitude of force a
person is justified in using in self-defense.Â  The prosecutor later commented
that Âif a defendant reasonably believes he or she is being attacked with
deadly force, then you [sic] can respond with deadly force.ÂÂ  But the
prosecutor also reiterated that his point was that there is a proportionality
requirement regarding the magnitude of force which may be used in self-defense.

Â Â Â Â Â Â Â Â Â Â Â  The
prosecutor correctly stated that there is a proportionality element
incorporated within the law of self-defense.Â  See McBride, 2006 WL
1965822, at *5; Seibert, 2004
WL 2804795, at *6.Tidmore,
976 S.W.2d at 728-29.Â  He acknowledged in voir dire that the issue of
self-defense must be viewed from the defendantÂs perspective and what he
reasonably believed.Â  Thus, we cannot say that the challenged statements, when
viewed in context, were affirmatively incorrect.

Â Â Â Â Â Â Â Â Â Â Â  Evans
also complains of a similar remark made during closing argument.Â  The
prosecutor stated, ÂAnd it says you can use deadly force in this scenario.Â 
When youÂre under attack or attempted attack by someone using or attempting to
use deadly force.Â  That is the scenario that talks about deadly force.Â

Â Â Â Â Â Â Â Â Â Â Â  As
with the challenged voir dire statements, this argument standing alone could be
construed as an assertion that there must be an actual use or attempted use of
deadly force before a person is justified in using deadly force in
self-defense.Â  However, when the argument is read in context with the prosecutorÂs
entire closing argument, we conclude that the prosecutorÂs focus on the
proportionality issue was not affirmatively incorrect.

Â Â Â Â Â Â Â Â Â Â Â  Just
before making the challenged statement, the prosecutor reminded the jury that a
person is justified in using force Âto the degree [he] believes is immediately
necessary viewed from his standpoint.ÂÂ  The charge accurately stated the
applicable law.Â  The prosecutor correctly stated that there is a
proportionality element incorporated within the law of self-defense.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly,
we cannot say that the court abused its discretion by overruling EvansÂs
objections to the complained-of voir dire statements and closing argument.Â 
EvansÂs second point is overruled.

Extraneous Misconduct

Â Â Â Â Â Â Â Â Â Â Â  Evans
contends in his third and fourth points respectively that the court abused its
discretion by excluding evidence of the complainantÂs prior history of drug use
and a prior assault he committed.

Â Â Â Â Â Â Â Â Â Â Â  At
the beginning of trial, the trial court granted the StateÂs motion in limine
regarding evidence of the complainant Timothy CarterÂs prior violent acts and
any prior possession or use of illegal drugs by Carter.Â  During EvansÂs
cross-examination of Carter, he sought to establish that Carter had Âcommitted
assaultsÂ and Âwas in possession of drugsÂ in Granbury.Â  Outside the presence
of the jury, EvansÂs counsel explained that these prior acts were relevant to
self-defense because Evans was aware of them when he assaulted Carter.Â  Evans
sought to make an offer of proof at this juncture in the trial Âabout the
assaults that occurred there and his drug use there.ÂÂ  After further discussion
regarding the relevance of the extraneous misconduct evidence, EvansÂs counsel
agreed to make an offer of proof later in the trial after establishing
relevance (i.e., by showing that Evans was aware of the extraneous
misconduct when he assaulted Carter).Â  However, Evans did not thereafter
attempt to make an offer of proof.

Â Â Â Â Â Â Â Â Â Â Â  The rules of evidence permit
the defendant to offer evidence concerning the victimÂs character for violence
or aggression on two separate theories when the defendant is charged with an
assaultive offense, as applicant was in this case.

Â 

Â Â Â Â Â Â Â Â Â Â Â  First, the defendant may
offer reputation or opinion testimony or evidence of specific prior acts of
violence by the victim to show the Âreasonableness of defendantÂs claim of
apprehension of dangerÂ from the victim.Â  This is called Âcommunicated
characterÂ because the defendant is aware of the victimÂs violent tendencies
and perceives a danger posed by the victim, regardless of whether the danger is
real or not.Â  This theory does not invoke Rule 404(a)(2) because Rule 404 bars
character evidence only when offered to prove conduct in conformity, i.e.,
that the victim acted in conformity with his violent character.Â  Here, the
defendant is not trying to prove that the victim actually is violent; rather,
he is proving his own self-defensive state of mind and the reasonableness of
that state of mind.

Â 

Â Â Â Â Â Â Â Â Â Â Â  .Â  .Â  .Â  .

Â 

Â Â Â Â Â Â Â Â Â Â Â  Second, a defendant may
offer evidence of the victimÂs character trait for violence to demonstrate that
the victim was, in fact, the first aggressor.Â  Rule 404(a)(2) is directly
applicable to this theory and this use is called Âuncommunicated characterÂ
evidence because it does not matter if the defendant was aware of the victimÂs
violent character.Â  The chain of logic is as follows: a witness testifies that
the victim made an aggressive move against the defendant; another witness then
testifies about the victimÂs character for violence, but he may do so only through
reputation and opinion testimony under Rule 405(a).

Â 

Ex parte
Miller, No. AP-76,167,
2009 WL 3446468, at * 4-5 (Tex. Crim. App. Oct. 28, 2009) (quoting Dempsey
v. State, 159 Tex. Crim. 602, 266 S.W.2d 875, 877 (1954)) (footnotes
omitted).

Â Â Â Â Â Â Â Â Â Â Â  To
preserve error with regard to the exclusion of evidence, a party must make an
offer of proof setting forth the substance of the excluded evidence unless the
substance of the evidence was apparent from the context.Â  Tex. R. Evid. 103(a)(2); Mays v.
State, 285 S.W.3d 884, 889-90 (Tex. Crim. App. 2009).Â  EvansÂs counsel plainly
informed the trial court that he wanted to offer evidence of a prior assault
committed by Carter for which he was placed on deferred adjudication community
supervision.Â  Thus, we conclude that Evans adequately preserved error with
regard to the courtÂs exclusion of this evidence.Â  See Mai v. State, 189
S.W.3d 316, 322 (Tex. App.ÂFort Worth 2006, pet. refÂd).

Â Â Â Â Â Â Â Â Â Â Â  Because
Evans claimed to be aware of this prior assault and because Evans sought to prove
it through CarterÂs own testimony, it appears that Evans sought to introduce
this evidence as Âcommunicated characterÂ evidence to show the Âreasonableness
of [his] claim of apprehension of danger.ÂÂ  See Miller, 2009 WL 3446468,
at * 4.Â  However, Evans never established that he was aware of this specific
assault.

Â Â Â Â Â Â Â Â Â Â Â  Evans
testified that Carter told him ÂheÂs been in a lot of fights and that heÂs been
in trouble for fighting.ÂÂ  This general statement is not sufficient to
establish that Evans was aware that Carter had committed an assault in Granbury
for which he was placed on deferred adjudication community supervision.Â 
Accordingly, the court did not abuse its discretion by excluding this
evidence.Â  See Hayes v. State, 124 S.W.3d 781, 785-86 (Tex. App.ÂHouston
[1st Dist.] 2003) (evidence of victimÂs prior assault with wrench admissible to
show reasonableness of defendantÂs fear because defendant personally knew of
incident, but evidence of victimÂs prior assault with gun inadmissible because
defendant had no knowledge of it), affÂd, 161 S.W.3d 507 (Tex. Crim. App.
2005).

Â Â Â Â Â Â Â Â Â Â Â  With
regard to evidence of CarterÂs alleged prior drug use, we construe EvansÂs
complaint as having two parts: (1) exclusion of evidence regarding CarterÂs
alleged possession of drugs in Granbury; and (2) permitting the StateÂs witness
to ÂminimizeÂ the presence of Valium in CarterÂs system on the day of the
assault.

Â Â Â Â Â Â Â Â Â Â Â  EvansÂs
father testified that Carter told them Âhe had done a lot of drugs in the
past.ÂÂ  This general statement is not sufficient to establish that Evans was
aware that Carter had possessed drugs in Granbury on a particular occasion.Â 
Accordingly, the court did not abuse its discretion by excluding this
evidence.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  The
State called Dr. Arthur Raines to establish that Carter suffered serious bodily
injury and that EvansÂs feet and the pavement against which he was Âjamming,
cramming, slammingÂ[2]
CarterÂs head both constituted deadly weapons in the manner of their use.Â  On
cross-examination, EvansÂs counsel reviewed CarterÂs medical records with Dr.
Raines and sought to establish from blood tests that Carter was under the
influence of a combination of alcohol, valium and marihuana at the time of the
assault.Â  Regarding valium, Dr. Raines opined that the amount indicated was a
therapeutic amount.Â  Evans objected that this opinion was speculative, but the
court overruled the objection.Â  On redirect, Dr. Raines explained that a
sedative like valium is often used in an emergency room as a sedative to assist
with a patientÂs intubation.

Â Â Â Â Â Â Â Â Â Â Â  Evans
did not call any experts of his own to try to refute Dr. RainesÂs
interpretation of CarterÂs medical records.Â  Dr. Raines explained the basis for
his opinion that the amount of valium in CarterÂs system was therapeutic.Â  We
cannot say that the court abused its discretion by overruling EvansÂs objection
to this testimony.Â  See DeLarue v. State, 102 S.W.3d 388, 396
(Tex. App.ÂHouston [14th Dist.] 2003, pet. refÂd) (ÂExpert testimony cannot be
based upon mere guess or speculation, but must have proper factual basisÂ).

Â Â Â Â Â Â Â Â Â Â Â  EvansÂs
third and fourth points are overruled.

We
modify the judgment by vacating EvansÂs conviction for aggravated assault under
Count One of the indictment and affirm the judgment as modified.Â  See
Caballero v. State, 292 S.W.3d 152, 156 (Tex. App.ÂSan Antonio 2009, pet. refÂd).

Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Modified and affirmed

Opinion
delivered and filed February 3, 2010

Do not publish

[CR25]

Â 

Â 









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The jury acquitted
Evans of the aggravated assault allegation contained in Count Two of the
indictment.





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  These are the words
of an eyewitness to the assault.