**Affirmed and Memorandum Opinion filed October 9, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00104-CR

---

### YANTSEY GONZALES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1303536**

---

## M E M O R A N D U M    O P I N I O N

In one issue, appellant Yantsey Gonzales complains that the trial court abused its discretion in excluding testimony regarding the murder complainant's violent nature to show the complainant was the first aggressor. We affirm.

### *Background*

The following facts are taken from appellant's statement offered by the State and admitted at trial. The complainant, Eric, told appellant's father (known as

"Boo") that a man named Shane had sold a gun to a woman, Linda, to kill Boo. Boo and Shane subsequently were shooting dice at Eric's house when they got into an argument.[1] Appellant went to the dice game and asked Shane about the gun. Shane said he had gotten the gun back from Linda, but he did not sell it to her to kill Boo. According to Shane, Linda told him she was buying the gun for protection. Appellant left.

Shane called appellant a couple of days later and said he heard appellant had a gun at the dice game and was planning to shoot Shane. Appellant responded that if he had wanted to shoot Shane, he would have done so. Later that day, appellant picked up his half-sister (known as "Jas") and drove by Eric's house. Appellant testified that he was stopped in the street in front of Eric's house due to traffic congestion. Eric walked toward appellant in his car, "hit him in [his] face,"[2] bloodied his face, and accused him of coming to Eric's house and threatening Shane with a gun. Eric told him, "I'm going to get you and your bitch ass daddy." Eric turned to walk away. Appellant then shot Eric and fled. Appellant and Jas were in the car during the entire confrontation.[3]

The State also presented witness testimony that after Eric approached appellant,[4] they were arguing because Eric was upset that appellant had gone by his house while he was not there. Eric asked, "Why d[id] you pull a gun on Shane?" Eric was yelling, but appellant was not. Eric then "slapped" appellant, which caused appellant to bleed from his nose and mouth. Eric said, "If you're going to

---

[1] Apparently, Eric was in jail at this time for traffic offenses.

[2] Later in his statement, appellant said that Eric "punched" him in the face.

[3] Appellant is confined to a wheelchair. He drives with the use of hand controls on his steering column.

[4] One witness testified that Eric flagged appellant down when he was driving by the house.

put your hand on your gun, [you had better] use it." Eric was turning away from the car when appellant shot him. Eric was not armed.

Jas testified on behalf of appellant. Appellant made the following offer of proof through Jas:

- Jas had seen Eric with a pistol on the morning of the shooting that he "[s]tuck . . . in his basketball shorts" and covered with his shirt.

- Jas had seen Eric carrying a pistol many times before.

- Eric "had a criminal history" and "had gone to the penitentiary for robbery."

The State objected to this testimony on the basis that it was not relevant. The trial court sustained the objection.

Jas testified that Eric hit appellant with his fist during the confrontation and it made a loud noise. Appellant was bleeding from his nose and mouth.[5] Eric then turned and reached to pull up his basketball shorts and then turned back toward appellant before appellant shot him.

Appellant also testified in his defense at trial. He testified that he had seen Eric carrying a gun many times and Eric was prone to violence and had gone to prison for felony robbery.[6] The jury found appellant guilty of murder, and the trial court assessed punishment at 30 years' imprisonment.

## ***Discussion***

In his sole issue, appellant argues that the trial court abused its discretion in excluding Jas's testimony regarding Eric's reputation for violence to show that he

---

[5] Appellant's counsel published to the jury pre-admitted pictures of appellant taken after Eric had hit him that showed blood under appellant's nose.

[6] Appellant testified that Eric had carried a gun "all the time" for the four or five years leading up to the shooting. Appellant and Eric had known each other their whole lives.

was the first aggressor. Appellant asserts that as a result, he was forced to take the stand to put on such evidence, thereby waiving his Fifth Amendment right not to incriminate himself. The State argues that the evidence was inadmissible because it was offered only to show character conformity, that any error was harmless because the evidence came in later through appellant, and that appellant was not forced to testify by an erroneous exclusion of evidence because he had a remedy by appeal. We conclude that the trial court abused its discretion when it excluded some of the evidence, but the trial court's error was harmless.

## I.     The trial court abused its discretion in excluding evidence of Eric's reputation for violence.

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). When a defendant is charged with an assaultive offense, as in this case, the defendant may offer evidence of the victim's character for violence or aggression under either of two theories. *See Ex Parte Miller*, 330 S.W.3d 610, 618 (Tex. Crim. App. 2009). Under the first theory, "communicated character," the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not. *Id.* "[T]he defendant is not trying to prove that the victim actually is violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind." *Id.* at 619. Appellant does not challenge the court's decision based on "communicated character."

Appellant's claim of self-defense relies upon the second theory, "uncommunicated character," which is offered to show that the victim was the first aggressor. *Id.* A defendant in a murder case who raises the issue of self-defense may offer opinion or reputation testimony to prove the complainant acted in

4

conformity with his violent nature. Tex. R. Evid. 404(a)(2), 405(a); *Torres*, 71 S.W.3d at 760. However, a defendant generally may not offer evidence of specific acts of violence by the victim to prove the victim's violent character. *Miller*, 330 S.W.3d at 619. Specific, violent acts of misconduct are admissible only to the extent that they are relevant for a purpose other than character conformity. Tex. R. Evid. 404(b). For example, prior specific acts may be admissible to show the deceased's state of mind, intent, or motive. *Torres*, 71 S.W.3d at 761. However, if a victim's unambiguous, violent, and aggressive acts need no explanation, then evidence of a victim's extraneous conduct admitted in conjunction with his unambiguous act may not be relevant. *Smith v. State*, 355 S.W.3d 138, 150 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct. *Torres*, 71 S.W.3d at 762.

Appellant complains that the trial court excluded the following testimony from Jas: Eric had been carrying a pistol on the morning of the murder, typically carried a gun, had a criminal history, and had been imprisoned for robbery. Appellant properly offered evidence of Eric's propensity for violence, as ample evidence had been admitted that Eric started the altercation by approaching and hitting appellant hard enough to cause him to bleed. *See Miller*, 330 S.W.3d at 619. However, appellant was not entitled to offer evidence of any specific prior bad acts—that Eric had been carrying a pistol the morning of the murder or that he had been imprisoned for robbery—to show Eric was the first aggressor, as that was an attempt to show conduct in conformity with his violent character prohibited by Rules 404(a) and 405(a).[7] *See id.* at 620. Further, Eric's actions need no further

---

[7] All references to rules are to the Texas Rules of Evidence. Rule 404(a) provides that evidence of a person's character or character trait generally is not admissible for the purpose of proving action in conformity therewith. Tex. R. Evid. 404(a). Under Rule 405(a), proof of a

5

explanation. *See Smith*, 355 S.W.3d at 150-51 ("[A] trial court is within its discretion to exclude prior violent acts if the victim's conduct was plainly aggressive and no explanation is necessary to show that the defendant reasonably feared for his life.").

Appellant's counsel argued for the first time during oral argument that Eric's carrying a gun on the morning of the murder was offered to show Eric's state of mind during the confrontation and was admissible under Rule 404(b). However, appellant did not make this argument at trial or in his appellate brief and thus did not preserve it for our review. *See* Tex. R. App. P. 33.1(a), 38.1(i). But even if he had, appellant has not offered an explanation regarding how this proffered evidence was probative of Eric's state of mind and thus would have shown anything other than character conformity. *Cf. Torres*, 71 S.W.3d at 762. Eric did not carry, display, or use a weapon during the confrontation. Moreover, appellant later testified that Eric had carried a gun "all the time," so the fact that he had been carrying a gun earlier that day does not indicate Eric's state of mind regarding appellant. Thus, the proffered evidence—that Eric was carrying a gun several hours before the confrontation—does not explain Eric's later conduct in confronting and striking appellant. *See id.*

The other evidence—that Eric typically carried a gun and had a criminal

person's character may be made by testimony as to reputation or in the form of an opinion. Tex. R. Evid. 405(a). Appellant argues the evidence of specific instances of conduct was admissible under *Dempsey v. State*, 266 S.W.2d 875 (Tex. Crim. App. 1954). However, the Court of Criminal Appeals has noted the following:

> The *Dempsey* line of cases stands for the proposition that . . . specific act evidence is admissible to show a victim's character and demonstrate[s] that either the defendant had a reasonable fear of the victim, or the victim was, in fact, the aggressor. However, this common law rule, as it developed, cannot be reconciled with the specific language of the [R]ules of [E]vidence [404(a) and 405(a), which specifically disallow particular acts of the victim to demonstrate character].

*Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998).

6

history—relates to Eric's reputation and tends to support the theory that Eric had a propensity for violence. We conclude that the trial court abused its discretion in excluding this evidence. However, we may sustain appellant's issue only if the trial court's error was harmful.

## II. The error is non-constitutional.

We first must determine whether the error is of constitutional dimension. A constitutional error that is subject to harmless error review requires reversal unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). Any other error that does not affect a substantial right must be disregarded. Tex. R. App. P. 44.2(b). An erroneous ruling excluding evidence rises to the level of a constitutional violation if it effectively prevents the defendant from presenting his defensive theory. *Walters v. State*, 247 S.W.3d 204, 221 (Tex. Crim. App. 2007); *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

Appellant was not precluded from presenting a defense in this case. The State put on the following evidence. Eric initiated the confrontation. Eric approached appellant, yelled at him, and "slapped" him hard enough to make him bleed from his nose and mouth. Appellant was not yelling. The State also introduced appellant's statement at trial, which was admitted. According to appellant, Eric walked toward appellant in his car, "hit" or "punched" him in the face, bloodied his face, and threatened "to get" him and his father.

Appellant, moreover, put on testimony from Jas that Eric said, "You and your bitch ass daddy pulled a pistol out on [Shane] at my house" and Eric then "hit" appellant. The sound of Eric's hand making contact with appellant's face was "loud," appellant was dazed after being punched, blood "was running . . . fast from [appellant's] nose and . . . mouth," and Eric turned away to pull up his shorts

7

after he hit appellant and then turned back toward appellant. During Jas's testimony, appellant's counsel published photos to the jury taken after Eric had hit appellant showing blood under his nose.

Appellant also testified that (1) he knew Eric carried a gun because he had been friends with Eric and saw him carrying it "all the time" for the four to five years leading up to the shooting; (2) Eric was prone to violence; (3) Eric had been to prison for robbery; and (4) appellant was afraid for his life or of serious bodily injury during the confrontation. Thus, appellant was able to present fully his self-defense theory that Eric was the first aggressor. *See Walters*, 247 S.W.3d at 221-22.

Appellant concedes that the subject matter of Jas's excluded testimony came in later during the trial through his own testimony. Appellant asserts, however, that he would not have testified but for the exclusion of Jas's testimony. He argues he was forced to testify to present this evidence in violation of his Fifth Amendment right against self-incrimination.[8] *See* U.S. Const. amend. V. To the contrary, appellant was not compelled to testify by the trial court's erroneous ruling. *See Walters*, 247 S.W.3d at 222.

The Court of Criminal Appeals has held that there is no compulsion in violation of the Fifth Amendment under these circumstances because the defendant has the option of refusing to testify and, if convicted, to obtain appellate correction of the erroneous evidentiary ruling. *Id*. Although this "rule puts the defendant to a

---

[8] We note that there were benefits and detriments to appellant's taking the stand. Appellant complains that the State was able to elicit bad facts about him during cross-examination, such as his criminal history and facts surrounding how he became paralyzed, which involved a drug deal. However, in his statement to police, appellant did not indicate that he had been afraid of Eric during the altercation. Thus, he was able to develop his self-defense theory through his testimony that he was afraid for his life or that he might be seriously injured during the confrontation.

hard tactical choice," the alternative would be to "give him two bites at the apple: testify, and try to win an acquittal; if that fails, appeal and get a new trial on the basis of the judge's ruling." *Id.* (quoting *United States v. Paladino*, 401 F.3d 471, 477 (7th Cir. 2005)).

Here, the erroneously excluded evidence was relevant to appellant's self-defense theory, but its exclusion did not prevent appellant from presenting a defense. *See id.* Rather, the testimony would have "incrementally" furthered his defensive theory. *See id.* Thus, the error was not constitutional, and the error must be disregarded unless a substantial right was affected. *See id.*; *see* Tex. R. App. P. 44.2(b).

### III. Appellant's substantial rights were not affected.

A substantial right is affected when the error had a substantial or injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A reviewing court should let a conviction stand if, after examining the record as a whole, it has fair assurance the error did not influence the jury or had but a slight effect. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

As set forth above, it is undisputed that Eric approached appellant and hit him severely enough to cause appellant to bleed from his nose and mouth. And, appellant stated that Eric threatened him and his father before doing so. Moreover, appellant testified, without objection by the State, regarding appellant's propensity for violence and tendency to carry a gun. *See Tollett v. State*, 422 S.W.3d 886, 896 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Any error in excluding evidence is harmless if the same evidence is subsequently admitted without objection."). Accordingly, appellant presented ample evidence that Eric was the first aggressor. In light of the totality of the evidence, we are fairly assured that the

9

exclusion of Jas's testimony regarding Eric's propensity for violence did not influence the jury or had but a slight effect.  Accordingly, we must disregard any error.  *See* Tex. R. App. P. 44.2(b).  We overrule appellant's sole issue.

We affirm the judgment of the trial court.


/s/     Martha Hill Jamison
Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Do not publish—TEX. R. APP. P. 47.2(b).