Martin Robert Henson v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-295-CR

Â Â Â Â Â MARTIN ROBERT HENSON,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 1999-27-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Pursuant to a plea agreement, the court sentenced Martin Robert Henson to six yearsâ
imprisonment for felony driving while intoxicated. Three years later, Henson filed a pro se notice
of appeal alleging that his sentence is illegal and that he received ineffective assistance of counsel
at trial.
Â Â Â Â Â Â Hensonâs notice of appeal is untimely. Tex. R. App. P. 26.2(a)(1); State v. Riewe, 13 S.W.3d
408, 410 (Tex. Crim. App. 2000); Fowler v. State, 16 S.W.3d 426, 428 (Tex. App.âWaco 2000,
pet. refâd). Because Henson did not timely file his notice of appeal, we lack jurisdiction over the
appeal. Id. Accordingly, we dismiss the appeal for want of jurisdiction.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Davis, 
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Dismissed for want of jurisdiction
Opinion delivered and filed October 30, 2002
Do not publish
[CR25]



pted use of unlawful force.Â  Tex. Pen. Code Ann. Â§ 9.31(a) (Vernon
2003).Â  The use of deadly force is warranted only where Âself-defense is
justified under Section 9.31, a reasonable person would not have retreated, and
when deadly force is reasonably necessary to protect against anotherÂs
use or attempted use of deadly force.ÂÂ  Bumguardner v. State,
963 S.W.2d 171, 173 (Tex. App.ÂWaco 1998, pet refÂd); see Tex. Pen. Code Ann. Â§ 9.32(a)(1)-(3)
(Vernon 2003).

Standard of Review 

Self-defense is a defense, not an
affirmative defense, under the Penal Code.Â  Tex.
Pen. Code Ann. Â§Â§ 2.03, 2.04, 9.02, 9.31 (Vernon 2003); Saxton v.
State, 804 S.W.2d 910, 912 n.5 (Tex. Crim. App. 1991).Â  The defendant has
the burden of
producing some evidence to support a claim of self-defense. Â Zuliani v.
State, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003).Â  Once the defendant
producesÂ that evidence, the State then bears the burden of persuasion to disprove the
raised defense. Â Id. Â The burden of persuasion does not require the State to
produce evidence; it requires only that the State prove its case beyond a
reasonable doubt. Â Id. Â A determination of guilt by
the factfinder implies a finding against the defensive theory. Â Id. Â The issue of self-defense is a fact issue to be determined
by the jury, which is free to accept or reject the defensive issue. Â Saxton,
804 S.W.2d at 912 n.5.

When a defendant challenges the legal
sufficiency of the evidence to support rejection of a defense such as self-defense,
we examine all of the evidence in the light most favorable to the verdict to
determine whether a rational jury could have found the accused guilty of all
essential elements of the offense beyond a reasonable doubt and also could have
found against appellant on the self-defense
issue beyond a reasonable doubt. Â See Saxton, 804 S.W.2d at 914. Â In
conducting our review of the legal sufficiency of the evidence, we do not reevaluate
the weight and credibility of the evidence, but ensure only that the jury
reached a rational decision. Â See Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).

In a factual sufficiency review, we ask
whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinderÂs verdict clearly wrong and
manifestly unjust.Â  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App.
2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).Â  ÂThe
court reviews the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compares it with the evidence
that tends to disprove that fact.ÂÂ  Johnson, 23 S.W.3d at 7 (quoting Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).Â  The appellate court
Âdoes not indulge in inferences or confine its view to evidence favoring one
side of the case.Â  Rather, it looks at all the evidence on both sides and then
makes a predominantly intuitive judgment. . . .ÂÂ  Id. (quoting William
Powers and Jack Ratliff, Another Look at ÂNo EvidenceÂ and ÂInsufficient
Evidence,Â 69 Texas L. Rev. 515, 519 (1991)).Â  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called Âthirteenth jurorÂ to review the
factfinderÂs weighing of the evidence and disagree with the factfinderÂs
determination.Â  Watson, 204 S.W.3d at 416-17.

When a defendant challenges the factual
sufficiency of the rejection of a defense, viewing all of the evidence in a neutral
light, we ask whether the StateÂs evidence, taken alone, is too weak to support
the verdict and whether the proof of guilt, although adequate if taken alone,
is against the great weight and preponderance.Â  Zuliani, 97 S.W.3d at 594-95.Â 
The State meets its burden of persuasion by proving its case beyond a
reasonable doubt and thus need not produce evidence directly refuting the
evidence of the defense.Â  Id. at 594.Â  If there is a reasonable doubt
with respect to the existence of a defense, the accused must be acquitted.Â  Tex. Pen. Code Ann. Â§ 2.03(d) (Vernon
2003); Winkley v. State, 123 S.W.3d 707, 712 (Tex. App.ÂAustin 2004, no
pet.).Â  In other words, the trier of fact must find against the defendant on
the defensive issue beyond a reasonable doubt.Â  See Saxton, 804 S.W.2d
at 914.

Analysis

At the time of the incident, Matthew Bailey
and Dudzik were employed as temporary contractors on a project to build a Sonic
Restaurant in Bryan-College Station.Â  That evening, Dudzik suggested that the
two go to the Silk Stocking after work.Â  At that time, Bailey was over twenty-one
years of age, but Dudzik was not.Â  Before going to the club, Bailey and Dudzik
went to several bars where they were both served alcohol.Â  When they arrived at
the club, Dustin Summers, the clubÂs manger, was stationed at the podium on the
right side of the clubÂs entrance; he was checking identification and taking
money.Â  In order to enter the club, a person had to have identification to
prove that they were twenty-one years of age.Â  Summers testified that Bailey
presented his identification but Dudzik did not.Â  Bailey and Dudzik went
outside and when they returned Henry had taken over for Summers at the podium.Â 
Bailey tried to convince Henry to allow them to enter and promised him they
would not drink.Â  Henry refused them entrance because Dudzik did not have
identification showing that he was over twenty-one.

Henry testified that after he informed
Dudzik that he could not enter the club without identification Dudzik became
agitated and asked Âhow about I kick or cut your n------ a--.ÂÂ  In response,
Henry unhooked the chain separating the foyer from the rest of the club to
escort Dudzik out of the club.Â  There was a chain between the podium at the
entrance and the wall, and when a person was allowed to enter the chain was
unhooked so that person could enter the club.Â  Henry testified that once he
unhooked the chain, Dudzik hit him and then immediately stabbed him in the
abdomen and temple.Â  Henry also testified that he was still standing behind the
podium when Dudzik stabbed him.Â  When asked why Henry felt it was necessary to
come around the podium to unhook the chain, he said ÂI didnÂt come around, I
wasnÂt coming around.Â  He came to me.Â  He hit me first.ÂÂ  Then he said he might
have been in the process of coming around, but that he intended to walk Dudzik
out of the club.Â  Henry consistently denied that he left the podium to confront
Dudzik because of the use of a racial slur.

Blake Rudolph testified that he followed
Dudzik and Bailey into the club on the night of the incident.Â  He remembered
that they were having trouble getting into the club and that Henry asked the
two to leave because they were underage but they refused.Â  After Rudolph
entered the club, he heard Dudzik talking ÂtrashÂ and using racial slurs and
then he saw Henry walk towards Dudzik to escort him out of the club.Â  Rudolph
testified that while Henry was initially walking towards Dudzik, something
changed that caused Henry to take Dudzik down to the ground.Â  Rudolph was
uncertain as to what caused Henry to tackle Dudzik, but at all times Dudzik
appeared to be in a rage.Â  After the fight was broken up, Dudzik continued to
taunt Henry and yelled ÂnobodyÂs going to take him to jailÂ and Âthat he knows
[sic] all the lawyers in town, heÂll get out of this.ÂÂ  Dudzik then attempted
to get in his truck and leave the scene.

Summers testified that he saw Henry and
Dudzik begin to wrestle at the entrance of the club.Â  Summers reached in to
grab Dudzik to throw him out of the club, but his momentum caused all three of
them to fall to the ground.Â  Summers then heard someone yell out that Dudzik
had a knife.Â  Summers stated that Dudzik continued to swing at them as he tried
to remove him from the club.Â  At that point, Jeremy Savant, a club regular, joined
Summers and helped him drag Dudzik outside.Â  After Dudzik was removed, Henry
came outside and informed Savant and Summers that he had been stabbed.Â  Savant
then ran over to Dudzik and handcuffed him.Â  According to Summers, as Dudzik
was attempting to flee he yelled something about a relative being a sheriff. Â After
he was handcuffed, Charles Stabenow, a patron at the club, handed Summers the
knife that he saw Dudzik throw into a plant inside the club.

Considering all of the evidence in the
light most favorable to the verdict, the jury could rationally have found
beyond a reasonable doubt that Dudzik committed the offense of aggravated
assault with a deadly weapon, rejecting his self-defense claim. Â See Saxton,
804 S.W.2d at 914; see also Padilla v. State, --- S.W.3d ---,
2008 Tex. App. Lexis 2719, at *4 (Tex. App.ÂEastland Apr. 17, 2008, pet. filed)
(evidence was legally sufficient to support jury's rejection of self-defense
claim because victim testified that appellant was the aggressor and
"rational juror could have believed her testimony and rejected
[appellant's] self-defense claim").Â  Accordingly, we find the evidence to
be legally sufficient and overrule DudzikÂs first issue.

In his brief, DudzikÂs factual
sufficiency complaint further argues the credibility of the witnesses and their
inconsistent testimony.Â  Specifically, Dudzik argues that
at trial Henry testified that it was the clubÂs policy to escort patrons from
the club only when they refused to leave.Â  Henry then testified that Dudzik did
not refuse to leave but that he attempted to escort Dudzik out of the club,
which Dudzik argues is an internal inconsistency.Â  Regarding the stabbing, Dudzik
argues that HenryÂs testimony was contradicted when Henry testified that he
yelled to Summers that he had been stabbed while he and Dudzik were still
fighting inside the club but Summers testified that Henry told him he was
stabbed when he and Henry were talking after the fight outside of the club.

Viewing all of the evidence in a neutral
light, we conclude that the evidence is factually sufficient to support the
jury's rejection of DudzikÂs self-defense claim and its finding of his guilt.Â 
HenryÂs testimony, when considered by itself, is not too weak to support the
rejection of DudzikÂs self-defense claim; and the evidence of his guilt is not
against the great weight and preponderance of the evidence.Â  See id. at
595.

The record demonstrates that Dudzik
stabbed Henry, and Dudzik does not dispute this fact.Â  The only evidence to
support DudzikÂs claim of self-defense was his testimony at trial and Bailey's
testimony about the events preceding the stabbing, which were contradicted in
key respects by Rudolph and Henry.Â  The jury's decision to accept or to reject
DudzikÂs claim of self-defense ultimately hinged on the credibility of the witnesses.Â 
There was conflicting evidence about the fight between Dudzik and Henry and it
was within the jury's province to resolve the disputed versions of the events
in question.Â  By returning a verdict of guilty, the jury necessarily resolved
those conflicts in favor of the State.Â  Giving due deference to the juryÂs role
as the factfinder, we will not disturb its finding.Â  See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).Â  Accordingly, we
find that the evidence was factually sufficient and overrule Dudzik's second
issue.




Extraneous Evidence 

Dudzik complains in his third and fourth
issues of the evidence admitted and excluded at trial.Â  In issue three, he
argues that the trial court abused its discretion when it excluded the
testimony of Clay Grenwelge because it was admissible to show not only that
Henry was the first aggressor but also to show motive, intent, and state of
mind.Â  In issue four, Dudzik complains that evidence that he was on
prescription medication to control his temper was not admissible because its
probative value was outweighed by the danger of unfair prejudice.

We review a trial courtÂs decision to admit
or exclude evidence for abuse of discretion. Â McDonald v. State, 179
S.W.3d 571, 576 (Tex. Crim. App. 2005). Â We do not substitute our judgment for that of the trial
court but rather decide whether the trial court's decision was arbitrary or
unreasonable.Â  Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Dudzik argues that Grenwelge would have
presented evidence to the jury about an incident similar to the incident for
which Dudzik is charged.Â  Specifically, about HenryÂs state of mind when he
hears racially charged comments.Â  Outside of the presence of the jury,
Grenwelge testified that in early 2000 he was attacked by Henry at Silk
Stockings.Â  According to Grenwelge, he and a friend were sitting at the bar
when he noticed his friend inappropriately touching the employees of the club
as they walked by.Â  When Henry approached them, Grenwelge turned to his friend
and said ÂI think the pet gorilla thinks itÂs time for us to go home.ÂÂ  Henry
allegedly then started hitting Grenwelge, knocked him to the ground and
repeatedly kicked him.Â  Grenwelge claims that he tried to file charges against
Henry, but he never received a return phone call from the Police Department.Â 
After the proffer, the trial judge citing Tate v. State ruled that GrenwelgeÂs
testimony was not admissible.Â  Tate v. State, 988 S.W.2d 887, 891 (Tex. App.ÂAustin 1999),
affÂd, 981 S.W.2d 189 (Tex. Crim. App. 2003).

In his brief, Dudzik argues that the
proffered testimony was admissible to show motive, intent, and state of mind, especially
when somebody uses a racial slur against Henry.Â  Dudzik cites to a line of
cases which hold that in the context of proving the deceased was the first
aggressor, specific, violent acts are relevant apart from showing character
conformity by demonstrating the deceased's intent, motive, or state of mind.Â  See
Tate v. State, 981 S.W.2d 189 (Tex. Crim. App. 2003); Torres v. State,
71 S.W.3d 758 (Tex. Crim. App. 2002); Mozon v. State, 991 S.W.2d 841,
846 (Tex. Crim. App. 1999).

Evidence of the victim's violent
character is relevant to support a claim that the victim was the first
aggressor, even if the defendant was unaware of the victim's violent character.
Â Tex. R. Evid. 404(b); Mozon,
991 S.W.2d at 845. Â However, for this theory to apply, the defendant must first
offer evidence of an actual act of aggression by the victim at the time of the
offense. Â Currie v. State, 692 S.W.2d 95, 97-98 (Tex. Crim. App. 1985).

Because Dudzik testified that Henry was
the first aggressor, he was entitled to offer evidence of extraneous acts of
violence by the victim.Â  Therefore, the court abused its discretion by
excluding this evidence.Â  We must now determine whether this error requires
reversal.

The erroneous exclusion of a defendantÂs
evidence generally constitutes non-constitutional error unless the excluded
Âevidence forms such a vital portion of the case that exclusion effectively
precludes the defendant from presenting a defense.ÂÂ  Potier v. State, 68
S.W.3d 657, 665 (Tex. Crim. App. 2002).Â  We have determined that the excluded
evidence in DudzikÂs case is relevant to his defensive theory.Â  However, its
exclusion did not prevent him Âfrom presenting the substance of his defense to
the jury.ÂÂ  Id. at 666 (quoting U.S. v. Willie, 941 F.2d 1384, 1399
(10th Cir. 1991)).Â  Accordingly, we will determine whether the erroneous
exclusion of GrenwelgeÂs testimony requires reversal using the
harm analysis set out in Rule of Evidence 103(a) and Rule of Appellate
Procedure 44.2(b).[1]Â  See Tex. R. Evid. 103(a); Tex.
R. App. P. 44.2(b); Potier, 68 S.W.3d at 666.

In Tate, the trial court
improperly excluded the victimÂs previous threat to kill the defendant, as such
a threat was admissible to show the victimÂs state of mind. Â Tate, 988 S.W.2d at 889. Â However,
the court of appeals found no error in the exclusion of the victimÂs threat, as
the evidence showed that in the middle of the physical altercation, the
defendant pulled a knife and stabbed the unarmed victim.Â  Id. at 891.Â 
Thus the court of appeals heldÂ  Âthe absence of any evidence that [the victim]
used deadly force against Tate convinces us that the erroneous exclusion of
GlenÂs testimony did not have substantial and injurious effect or influence in
determining the juryÂs verdict rejecting TateÂs self-defense claim.ÂÂ  Id.

Like Tate, the record reflects
that at the very least Dudzik pulled a knife during the middle of a physical
altercation and stabbed Henry, who was unarmed.Â  Furthermore, like Tate,
there is no evidence that Henry used deadly force against Dudzik. Â Several
witnesses testified that Dudzik did not attempt to retreat and refused to leave
even after the altercation ended.Â  Consequently, the exclusion of GrenwelgeÂs
testimony did not have a substantial or injurious effect or influence in
determining the juryÂs verdict rejecting DudzikÂs self-defense claim.Â  Because
we do not think the minds of an average jury would have found the State's case
any less persuasive had the testimony been admitted, we overrule Dudzik's third
issue.

Dudzik also argues that the trial court
erred when it admitted evidence that he was taking prescription medication to
control his temper.Â  He argues that though the evidence may have been relevant
under evidence Rule 401, it was not admissible under Rule 403 because its probative
value was substantially outweighed by the danger of unfair prejudice.

A Rule 403 analysis by the trial court
should include, but is not limited to, the following factors:Â  (1) how
probative is the evidence; (2) the proponentÂs need for the evidence; (3) the
time the proponent needs to develop the evidence; and (4) the potential of the
evidence to impress the jury in some irrational, but nevertheless indelible
way.Â  Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).

Â Â Â Â Â Â Â Â Â Â Â  We must give appropriate
deference to the trial courtÂs determination that the probative value of the
evidence in question is not substantially outweighed by the danger of unfair
prejudice.Â  See Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App.
2003).Â  We should reverse such a determination Ârarely and only after a clear
abuse of discretion.ÂÂ  Id. (quoting Montgomery v. State, 810
S.W.2d 372, 392 (Tex. Crim. App. 1991)).

Â Â Â Â Â Â Â Â Â Â Â  The probative value factor Âlooks to the
evidenceÂs probativeness or how compellingly the evidence serves to make a fact
of consequence more or less probable.Â Â State v. Mechler, 153 S.W.3d
435, 440 (Tex. Crim. App. 2005).Â  Here,
the key dispute was whether Dudzik acted with criminal intent or in
self-defense.Â  Evidence of DudzikÂs need for medication to control his temper
was probative as to his state of mind and intent when he stabbed Henry.Â  There
was also disputed evidence as to whether Dudzik actually acted in
self-defense.Â  Henry testified that Dudzik was the first aggressor and other
witnesses testified that they did not see who acted first.Â  As such, the
StateÂs need for evidence suggesting that Dudzik was acting with criminal
intent as opposed to self-defense was great.Â  The first two factors weigh in favor of admissibility.

Further, the evidence of DudzikÂs mental
history was introduced through Bailey, DudzikÂs witness, who made a statement
to police on the night of the incident that Âthe defendant told me he was on
meds for a bad temper.ÂÂ  There is no indication that the State spent more than
a minimal amount of time presenting evidence of DudzikÂs temper medication.Â  Thus, three of the four factors under
consideration favor the courtÂs decision to admit the evidence regarding
DudzikÂs temper medication.Â  Accordingly, giving appropriate deference to the trial
courtÂs decision, we cannot say that the court abused its discretion by
admitting this evidence.Â  See Moses, 105 S.W.3d at 627.Â  Therefore, we
overrule DudzikÂs fourth issue.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having
overruled DudzikÂs issues, we affirm the judgment.

Â 

Â 

Â 

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Â Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray concurs only in the judgment of the Court to the extent it affirms
the trial courtÂs judgment.Â  A separate opinion will not issue.Â  He would also
like to hear argument in this case.)

Affirmed

Opinion
delivered and filed November 26, 2008

Publish

[CR25]








Â 









1Â Â Â Â Â Â Â Â 
As the Court of Criminal Appeals
explained, Â[T]he specific rule that applies to [the erroneous admission or
exclusion of] evidence is Rule of Evidence 103(a): ÂError may not be predicated
upon a ruling which admits or excludes evidence unless a substantial right of
the party is affected.ÂÂ  But the standard of review under that rule is the same
as that under Rule of Appellate Procedure 44.2(b).Â Potier v. State, 68
S.W.3d 657, 666 (Tex. Crim. App. 2002) (quoting Tex. R. Evid. 103(a)).

Â 

Â