Christopher Michael TATE, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–97–00240–CR.

Court of Appeals of Texas, Austin.

Dec. 4, 1997.

James H. Kreimeyer, Belton, for Appellant.

Arthur Cappy Eads, District Attorney, James T. Russell, Administrative Assistant, Belton, for State.

Before POWERS, ABOUSSIE and B. A. SMITH, JJ.

BEA ANN SMITH, Justice.

A jury found appellant Christopher Michael Tate guilty of murder. Tex. Penal Code Ann. § 19.02(b)(2) (West 1994). The district court assessed punishment at imprisonment for sixty years. In a single point of error, Tate contends the court erred by excluding evidence that the deceased had threatened to kill him, which evidence he contends was relevant to his claim of self-defense. We conclude that the evidence was properly excluded, although for a reason different from that given by the district court. Accordingly, we will affirm the conviction.

Tate lived with his girlfriend Jessica Windham. The deceased, Michael Neal Rackley, was Windham's father. Windham testified that she and Tate spent the afternoon of August 18, 1996, drinking with friends. When they returned to their mobile home that evening, they began to argue. The argument degenerated into a shoving and wrestling match in the front yard. A neighbor broke up the fight, after which Tate entered the trailer and went to bed. Windham went to the neighbor's house, called Rackley, and asked him to come get her. When Rackley arrived, Windham went inside the trailer to get her things. Tate had taken Windham's purse during their fight and would not return it. Rackley, who could hear Tate and Windham talking as he stood outside the back door of the mobile home, shouted, "Come on, man, just give her her purse." Tate replied, "Come on, old man, do you want some of this?" Rackley, who had also been drinking,[1] answered, "Come outside and I'll whip your ass." Tate accepted Rackley's invitation and the two men began to fight on the back porch. Windham said, "[T]hey were like pulling and pushing and hitting each other." She got between them and broke up the fight, ordering her father to return to his pickup truck and Tate to return to the bedroom. But as Windham turned to walk away, the fight was renewed. Windham again stopped the fight, this time taking Tate to the bedroom while Rackley remained outside. Windham resumed her search for her purse. When she looked up, she saw Tate with "blood all over his face and it was like all over his chest and his hands." Windham found Rackley lying on the back porch with "blood everywhere."

Tate had stabbed Rackley six times with a throwing knife. Two of the stab wounds penetrated almost seven inches, piercing Rackley's heart, several major arteries, and a lung. These wounds were fatal.

Tate testified that he and Windham fought often. "[E]very time we [Tate and Windham] drank we always got into fights and every time we got into fights she would call her dad and her dad would come over, threaten me, at times he beat me up." Appellant described a previous fist fight with Rackley that had been broken up by Windham. Tate testified that he tried to fight back when Rackley attacked him, but "he was a lot bigger than I was. He overpowered me."

With regard to the night in question, Tate testified that he was awakened by Windham's return to the trailer. He heard Rack-

---

1. The medical examiner testified that Rackley's blood alcohol level was between .13 and .16.

ley outside, "yelling at me, cussing at me, threatening me." When Tate went to the back door, Rackley "started swinging at me. So I started batting his hands down." After Windham stepped in, Tate went to the bedroom, put on shorts, and armed himself with the knife. When Tate returned to the back door of the trailer, Rackley "drug me down to my knees.... I fell onto my knees inside the door frame and that's when he was hitting me.... I fell forward and that's when I stabbed him the first time." Tate testified, "I just tried to get him off of me. He was being the aggressor." Tate said he remembered stabbing Rackley only three times. Tate testified he armed himself before resuming his confrontation with Rackley because "he was drunk, belligerent and scaring me. He kept threatening my life, telling me he was going to kill me." Tate added, "I was afraid of him. I was scared."

The jury was instructed on the use of deadly force in self-defense. Tex. Penal Code Ann. §§ 9.31(a), 9.32(a) (West 1994 & Supp.1997). By its verdict, the jury concluded that Tate was not justified in killing Rackley.

Tate contends the district court erred by excluding the testimony of his aunt, Brenda Turner Glen, concerning a threat to kill Tate made by Rackley. By bill of exception, Glen testified, "[Rackley] was talking to me [in early summer 1996] and he said that he was getting tired of all the animosity that was in the family.... He was getting tired of Jessica calling wolf every time something happened and he was getting tired of having to deal with it. And he said it's going to cause me to have to kill the little son of a bitch some day." Glen said that Tate did not hear this remark and, as far as she knew, never learned of it. The State objected that this testimony was inadmissible because the threat was not communicated to Tate. The court sustained the objection saying, "[I]t is not relevant ... [because] it was not communicated to the defendant per the witness's testimony."

■ Appellant relies on a line of authority stating that in a homicide case in which there is evidence of some act of aggression by the deceased that raises an issue as to whether the defendant justifiably acted in self-defense, the defendant may introduce evidence of the deceased's violent character, as well as evidence of prior acts of violent misconduct (or threats of violence) by the deceased which illustrate his violent character. *Gutierrez v. State,* 764 S.W.2d 796, 798 (Tex. Crim.App.1989); *Thompson v. State,* 659 S.W.2d 649, 653 (Tex.Crim.App.1983); *Lowe v. State,* 612 S.W.2d 579, 580 (Tex.Crim.App. 1981); *Dempsey v. State,* 159 Tex.Crim. 602, 266 S.W.2d 875, 877 (App.1954). This testimony is said to be admissible pursuant to one or both of two theories: (1) to support the defendant's claim that he reasonably believed the force he used was immediately necessary to protect himself and (2) to support the defendant's claim that the deceased was the aggressor. *Gutierrez,* 764 S.W.2d at 798; *Thompson,* 659 S.W.2d at 653–54; *Dempsey,* 266 S.W.2d at 877–78; *see* 1 Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 404.4 (Texas Practice 2d ed.1993) (hereafter *"Guide to Texas Rules"*); Helen D. Wendorf, David A. Schlueter & Robert R. Barton, *Texas Rules of Evidence Manual* IV–46 (3d ed.1994) (hereafter *"Evidence Manual"*). The deceased's violent character is relevant to prove the reasonableness of the defendant's apprehension of danger only if that character was known to the defendant. *Thompson,* 659 S.W.2d at 653; *Dempsey,* 266 S.W.2d at 877. But the defendant need not be aware of the deceased's violent character if the evidence is offered to prove that the deceased was the aggressor. *Thompson,* 659 S.W.2d at 653–54; *Dempsey,* 266 S.W.2d at 877–78. In the latter situation, the deceased's violent character is relevant to support the inference that he acted in conformity with his character; that is, was the aggressor as the defendant claims. *Guide to Texas Rules* § 404.4.

■ Rackley's remark that he might "have to kill the little son of a bitch" was not relevant to show the reasonableness of Tate's claimed apprehension of danger because the remark had not been communicated to him. But Tate correctly argues that it was unnecessary for him to have been aware of Rackley's remark for it to be relevant to his claim

that Rackley was the aggressor in the fatal encounter. *See Lowe*, 612 S.W.2d at 580 (evidence deceased told witness "he always knew that one of these days he would have to be the one to kill" defendant was admissible to show deceased was aggressor). The State contends Tate did not clearly articulate this theory of admissibility in the district court. We disagree. After the State objected that Rackley's remark had not been communicated to Tate, defense counsel argued, "[T]he threat does not have to be communicated if it ... would show his intent prior to going over there." We believe this was sufficient under the circumstances to make the court aware that Tate was offering Glen's testimony to support his claim that Rackley was the aggressor. The district court erred by excluding evidence of Rackley's threatening remark on the ground that it was irrelevant because it had not been communicated to Tate.

■ We conclude, however, that while relevant, Glen's testimony was inadmissible for another reason. The *Dempsey* line of authority must be read in light of the rules of criminal evidence adopted since *Dempsey* was decided. The rules generally prohibit the circumstantial use of character evidence; that is, evidence of a person's character or a trait of his character is generally not admissible to prove that he acted in conformity therewith on a particular occasion. Tex. R.Crim. Evid. 404(a); *see Guide to Texas Rules* § 404.2. As an exception to this general rule, evidence of a pertinent character trait of the victim may be offered by the accused. Tex.R.Crim. Evid. 404(a)(2). This is consistent with *Dempsey*. Under the rules, however, a person's character may usually be proved only by reputation or opinion testimony. Tex.R.Crim. Evid. 405(a). Moreover, the rules expressly prohibit the use of other crimes, wrongs, or acts as character conformity evidence. Tex.R.Crim. Evid. 404(b). This represents a change from

*Dempsey*, which permitted evidence of prior threats or acts of violent misconduct to prove that the deceased was the aggressor; that is, to prove character conformity. Under the rules of criminal evidence, the defendant may offer opinion or reputation evidence of the victim's violent character in order to prove that the victim was the aggressor, but may not offer evidence of specific instances of conduct for that purpose. *Guide to Texas Rules* §§ 404.4 n. 5, 405.2.2; *Evidence Manual* IV–46, IV–103.[2]

Under rule 404(a)(2), Tate was permitted to prove Rackley's violent character as a pertinent trait tending to prove circumstantially that Rackley was the aggressor, thereby supporting his self-defense claim. But under rule 404(b), Tate could not introduce evidence of specific acts or threats of aggression by Rackley to prove character conformity on the occasion in question. Rackley's violent character was not in itself an essential element of Tate's self-defense claim, but only a circumstance tending to show that Rackley was the aggressor. Therefore, specific conduct evidence was not admissible pursuant to rule 405(b). *Evans v. State*, 876 S.W.2d 459, 463–64 (Tex.App.—Texarkana 1994, no pet.). *Contra Reich–Bacot v. State*, 914 S.W.2d 666, 669 (Tex.App.—Texarkana), *vacated and remanded on other grounds*, 936 S.W.2d 961 (Tex.Crim.App.1996); *Gonzales v. State*, 838 S.W.2d 848, 859 (Tex.App.—Houston [1st Dist.] 1992), *pet. dism'd as improvidently granted*, 864 S.W.2d 522 (Tex.Crim.App. 1993). For this reason, we hold that the district court properly excluded Glen's testimony regarding Rackley's threatening remark.

The point of error is overruled and the judgment of conviction is affirmed.

---

2. The rules permit the use of specific instances of conduct as direct evidence of character only in cases in which character is an essential element of a charge, claim, or defense. Tex.R.Crim. Evid. 405(b); *see Purtell v. State*, 761 S.W.2d 360, 369 (Tex.Crim.App.1988) (rule 405(b) distinguishes between permissible uses of character and essential uses; only in latter may character

be proved by specific acts); *Guide to Texas Rules* § 405.3 (rule 405(b) applies when character is ultimate issue). Character as such is almost never an element of a charge or defense in a criminal case. *Gilbert v. State*, 808 S.W.2d 467, 471 n. 5 (Tex.Crim.App.1991); *Guide to Texas Rules* § 404.2; *Evidence Manual* IV–103.