Christopher Michael TATE, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–97–00240–CR.

Court of Appeals of Texas,
Austin.

March 11, 1999.

---

James H. Kreimeyer, Belton, for Appellant.

James T. Russell, Asst. Dist. Atty., Belton, Matthew Paul, State's Atty., Austin, for State.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and POWERS. *

## ON REMAND

BEA ANN SMITH, Justice.

On original submission, this Court affirmed appellant Christopher Michael Tate's conviction for murder. *Tate v. State*, 956 S.W.2d 845 (Tex.App.—Austin 1997); *see* Tex. Penal Code Ann. § 19.02(b)(2) (West 1994). The court of criminal appeals reversed our judgment after concluding that certain defensive evidence was erroneously excluded by the district court and that this Court erred by holding otherwise. *Tate v. State*, 981 S.W.2d 189 (Tex.Crim.App.1998). The appeal was remanded to us to conduct a harm analysis. *Id.* at 193. We will again affirm.

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment.

## Background

Tate fatally stabbed Michael Neal Rackley, the father of his live-in girlfriend, Jessica Windham. The stabbing was the culmination of an argument between Tate and Rackley, both of whom had been drinking. Tate testified that he acted in self-defense, and that issue was submitted to the jury. *See* Tex. Penal Code Ann. §§ 9.31(a), 9.32(a) (West 1994 & Supp.1999) (use of deadly force in self-defense). The jury concluded that the killing was not justified.

In his only point of error, Tate contended the district court erroneously excluded the testimony of Tate's aunt, Brenda Turner Glen. Glen would have testified to a conversation she had with Rackley about two months before his fatal encounter with Tate. Referring to the many arguments between his daughter and Tate, Rackley told Glen "he was getting tired of all the animosity that was in the family.... He was getting tired of Jessica calling wolf every time something happened and he was getting tired of having to deal with it. And he said it's going to cause me to have to kill the little son of a bitch some day." Tate was not aware of this remark.

In his brief to this Court on original submission, Tate argued that Glen's testimony was admissible under what we called the *Dempsey* line of authority. *See Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875, 877 (Tex.Crim.App.1954). *Dempsey* and subsequent opinions held that in a homicide case in which there is evidence of aggression by the deceased that raises the issue of self-defense, the defendant may introduce evidence of the deceased's violent character, and evidence of prior acts of violent misconduct (or threats of violence) by the deceased which illustrate his violent character, either (1) to support the defendant's claim that he reasonably believed the force he used was immediately necessary to protect himself, or (2) to support the defendant's claim that the deceased was the aggressor. *See Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex.Crim.App.1989); *Thompson v. State*, 659 S.W.2d 649, 653–54 (Tex.Crim.App.1983); *Dempsey*, 266 S.W.2d

*See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

at 877–78. We held that Rackley's remark that he might "have to kill the little son of a bitch" was not relevant to show the reasonableness of Tate's claimed apprehension of danger because the remark had not been communicated to him, but we agreed with Tate that the remark was relevant to support his claim that Rackley had been the aggressor. *Tate,* 956 S.W.2d at 847–48. We further held, however, that the holding in *Dempsey* and its progeny had been limited by the rules of evidence.[1] Under the rules, a person's character may usually be proved only by reputation or opinion testimony. Tex.R. Evid. 405(a). Evidence of other crimes, wrongs, or acts may not be used as character conformity evidence. Tex.R. Evid. 404(b). We concluded that under rule 404(b), evidence of the threat was not admissible to prove Rackley's aggressive character and that the district court did not err by excluding the threatening remark. *Tate,* 956 S.W.2d at 848.

On Tate's petition for discretionary review, the court of criminal appeals agreed with our holding that the threatening remark was not admissible to prove Rackley's aggressive character.

> We ... agree that Rules 404(a) and 405(a) specifically disallow particular acts of the victim to demonstrate character. The *Dempsey* line of cases stands for the proposition that reputation or specific act evidence is admissible to show a victim's character.... However, this common law rule, as it developed, cannot be reconciled with the specific language of the relevant rules of evidence.

*Tate,* 981 S.W.2d at 192. The court went on, however, to hold that Rackley's threatening remark was admissible under a theory Tate did not advance in this Court. Noting that rule 404(b) permits evidence of specific conduct for purposes other than to show character, the court wrote:

> [T]he evidence of this uncommunicated threat by Rackley, allegedly made only a month or two before Rackley's death, had relevance beyond its tendency to demonstrate Rackley's character. A reasonable

jury could have believed this evidence shed light upon Rackley's state of mind when he arrived at appellant's house on the night in question.... In other words, the statement ... was probative of his state of mind and possibly indicated a motive or demonstration of intent behind the confrontation that evening. In sum, Glen's testimony concerning Rackley's threat was probative of whether he was, in fact, the aggressor and admissible for "other purposes" besides demonstrating character and actions in conformity therewith.

*Id.* at 193. Thus, the court concluded that the exclusion of the testimony was error and remanded the appeal to us for a harm analysis. *Id.*

### Standard of review

A constitutional error that is subject to harmless error review requires reversal unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a). Any other error that does not affect a substantial right must be disregarded. Tex.R.App. P. 44.2(b); *and see* Tex.R. Evid. 103(a) The court of criminal appeals did not specify whether we are to apply rule 44.2(a) or rule 44.2(b) to the error it found in this cause.

Tate argues that the exclusion of the testimony regarding Rackley's threat was constitutional error. He relies on the indisputable proposition that a defendant has a constitutional right to call witnesses and offer evidence in his own behalf. *See Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Brazelton v. State,* 947 S.W.2d 644, 650 (Tex.App.—Fort Worth 1997, no pet.); *Hernandez v. State,* 897 S.W.2d 488, 493 (Tex.App.—Tyler 1995, no pet.). From this, Tate leaps to the conclusion that constitutional error is committed whenever a trial court erroneously excludes defensive evidence. The cited opinions do not support this broad reading of rule 44.2. In fact, none of them addresses the harmless error rule. Under Tate's reasoning, every trial error would be a constitutional error

---

1. In our original opinion, we cited the rules of criminal evidence then in effect. The present rules of evidence are identical in all relevant respects.

under rule 44.2 because criminal defendants are constitutionally guaranteed a fair trial.

The court of criminal appeals was recently called upon to apply rule 44.2 to jury selection error. *Jones v. State*, 982 S.W.2d 386, 390–91 (Tex.Crim.App.1998). While acknowledging that constitutional provisions bear on the selection of a jury to try a criminal case, the court observed that the constitutional right to trial by an impartial jury is not violated by every jury selection error. *Id.* The court held that because the error in that case was merely a mistaken application of article 35.16(b)(3), the error was not of constitutional dimension. *Id.; see* Tex.Code Crim. Proc. Ann. art. 35.16(b)(3) (West Supp.1999).

■ A constitutional error within the meaning of rule 44.2(a) is an error that directly offends against the United States or Texas constitution, without regard to any statute or rule that might also apply. With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required. A mere misapplication of the rules of evidence is not constitutional error. Both the court of criminal appeals and this Court have treated a violation of the evidentiary rules that results in the erroneous admission of evidence as nonconstitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Galvez v. State*, 962 S.W.2d 203, 207 (Tex.App.—Austin 1998, pet. ref'd). Similarly, the erroneous exclusion of defensive evidence is not constitutional error if the trial court's ruling merely offends the rules of evidence.

■ The court of criminal appeals did not hold that Tate was constitutionally entitled to offer Glen's testimony. In fact, neither federal nor state constitution is cited in the court's opinion. Instead, the opinion discusses the rules of evidence at length and agrees that the threatening remark was not admissible as character evidence, but concludes that the threat was admissible under rule 404(b) as evidence of Rackley's state of mind or intent on the night he was killed. Because the court of criminal appeals held only that Tate was entitled to offer Glen's testimony

pursuant to rule 404(b), we conclude that constitutional error is not presented and that the error must be disregarded unless a substantial right was affected.

### Substantial right not affected

■ A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417 (citing *King*).

■ Rackley's statement that he "might have to kill" Tate was admissible as evidence of Rackley's intent or motive to cause Tate harm on the night in question. *Tate*, 981 S.W.2d at 193. Evidence that Rackley had such a motive or intent tends to support Tate's claim that Rackley was the aggressor. *Id.* But even if we assume that the jury would have taken Rackley's remark at face value, the erroneous exclusion of the remark did not affect Tate's substantial rights under the circumstances shown by this record.

The jury was properly instructed to sustain Tate's claim of self-defense if it found or had a reasonable doubt that Tate reasonably believed deadly force was immediately necessary to protect himself against Rackley's use or attempted use of unlawful deadly force. *See* Penal Code § 9.32(a)(3)(A). The evidence shows that after Rackley arrived at Tate's trailer, he called to Tate to come outside and threatened to "whip [Tate's] ass." Tate testified that when he first went outside, Rackley cursed and threatened him, then "started swinging at me." There is no evidence that Rackley was armed. When Tate reentered the trailer, Rackley did not pursue him. After arming himself with the knife, Tate returned to the porch where Rackley was waiting. According to Tate, Rackley "drug me down to my knees" and "was hitting me." It was then, said Tate, that he stabbed Rackley "just to get him off of me." Tate testified that Rackley was "threatening my life, telling me he was going

to kill me," but there is no evidence that Rackley used deadly force during his fight with Tate.

Tate argues that the exclusion of Rackley's threat "allowed [the State] to paint for the jury a picture of no aggression on the part of the deceased." This assertion is factually wrong; there was evidence that Rackley was belligerent and aggressive on the night in question. Tate further argues that without evidence of Rackley's earlier threat to kill him, the State was able "to belittle [Tate's] effort to show that the fear of being seriously injured or even killed was a reasonable belief...." This assertion is legally wrong; because Tate did not know about the threat, it was not admissible to prove that Tate reasonably believed the force he used was necessary, but only to prove that Rackley was the aggressor. *Tate,* 981 S.W.2d at 192–93. Finally, Tate argues that had the threatening remark been properly admitted, the State could not have argued to the jury that there was no evidence Rackley used deadly force. We fail to see why this would be so; evidence that Rackley threatened to kill Tate two months earlier is not evidence Rackley used deadly force on the night he was killed.

The absence of any evidence that Rackley used deadly force against Tate convinces us that the erroneous exclusion of Glen's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict rejecting Tate's self-defense claim. *See King,* 953 S.W.2d at 271. On this record, there is a fair assurance that the error did not influence the jury, or had but a slight effect. *See Johnson,* 967 S.W.2d at 417. Because we find that the error did not affect a substantial right, we again overrule the point of error. *See* Rule 44.2(b).

The judgment of conviction is affirmed.