**Opinion issued April 4, 2024**



In The

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-22-00637-CR**

————————————

**JOSEPH ANDREW BEACH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 86276-CR**

---

**MEMORANDUM OPINION**

Appellant Joseph Andrew Beach appeals from his conviction for soliciting the murder of his ex-wife, Christine. *See* TEX. PENAL CODE § 15.03(a). For the reasons explained below, we modify the trial court's judgment and affirm as modified.

## BACKGROUND

While Beach was serving time in prison, he befriended George O'Day, another inmate. According to O'Day, who testified at trial, while he and Beach were in prison, Beach talked to O'Day about wanting to have Christine killed. O'Day was scheduled to be released on parole, and he testified that Beach asked O'Day to kill Christine after he was released. O'Day said that Beach told him where Christine lived, told him when their kids would be dropped off at school, and told him to ring the doorbell and shoot Christine in the face. O'Day said that Beach offered him a truck and half of Christine's life insurance policy for killing Christine. O'Day testified that he did not take statements like this seriously at first. He explained that in prison, "[P]eople talk about all kind of different things. So, I mean, I just kind of blew it off. I thought it was a joke." O'Day acknowledged that in prison there is a lot of embellishment and bragging about things that never happened.

At some point, though, O'Day began to take Beach seriously and believed Christine was in danger. O'Day wrote Christine a letter to warn her; the terms of the letter were vague, however.[1] Prison officials intercepted this letter and brought

---

[1]    In this letter, O'Day wrote:

> I understand you are facing charges . . . . If you could get your lawyer to come visit with me and I'll be glad[] to speak to him on your behalf. There's a picture being painted about you by Mr. Beach which is not right! I've seen pictures of you and the children, nice family by the way!

O'Day in for questioning. In that meeting, O'Day told the officials about Beach's plan to have Christine killed, and the officials asked O'Day to help them get corroborating evidence. O'Day agreed to cooperate by wearing a recording device and initiating a conversation with Beach. O'Day repeatedly testified that he did not do so to help his chances at parole, nor was he offered anything in return for his cooperation; he said he only wanted to do what was right. He also testified that prison officials did not tell him what to say during the conversation with Beach.

O'Day wore a recording device and went to an area known as "the church," where he ran into Beach. In the recorded conversation, which was played for the jury, Beach discussed with O'Day several of his pending lawsuits. Beach talked about suing Christine because the trial court awarded all of his property to her in their divorce proceeding, trying to have criminal charges for tax fraud filed against Christine, and having his nephew fabricate charges of child molestation against Christine to bring criminal charges against her. Then, unprompted, Beach said:

> I'm going to demolish this [b____]. I'm going to demolish her and take everything away from this [f_____] [w____] and put her in [f_____] jail and you're gonna stick 'em up and walk up and put two slugs in her [f_____] head any time you're ready to do it. Any [f_____] time, and I'll pay you for it. The truck is already yours.

Later in the recorded conversation, as Beach was discussing the ways in which

---

O'Day explained that, if he had directly told Christine about the plot to kill her, prison officials would have stopped the mailing because they would have considered the letter a threat.

3

he wanted to "demolish" Christine through his various lawsuits, the following exchange occurred:

> O'Day: Okay so if I get out before you, you just want me to hold off on popping a cap in her [a  ]?
>
> Beach: Dude, if you, if you, if you step, I . . . Okay, I gotta stop this. I gotta stop acting like this. I want revenge so bad, that I want her to see me slosh her in court. If you, with everything that's going on right now, if you stepped out, and you popped a cap in this [b____]'s head, it would stop everything. I would get everything. Everything would be stopped, I would be awarded—
>
> O'Day: Everything's yours.
>
> Beach: Everything's mine. So do that. Let's just stick with the game plan, and I will give you whatever the [f___] you could possibly imagine for the rest of your life. Period.

After O'Day obtained this recording, prison officials asked O'Day to arrange another meeting with Beach. O'Day again wore a recording device to this meeting that was ostensibly to discuss legal paperwork, but the device's battery died near the beginning of the conversation. During that meeting, which took place in a small holding cell separated by bars with slits so that two inmates can talk with each other and share documents, Beach gave O'Day a picture of Christine with her name and address written on the back.

Beach did not call any witnesses at trial. In his closing argument, defense counsel discussed several defensive theories of the case: he claimed that O'Day was trying to scam or hustle Christine by writing the letter to her, and when he got caught, he turned on Beach to shift the focus of the prison officials' investigation away from

4

himself because he was scheduled to be released on parole soon. Defense counsel also pointed out that O'Day never took Beach's claims seriously until O'Day himself was investigated for his contact with Christine. Lastly, defense counsel did not deny that the recorded conversations between Beach and O'Day occurred, but he said Beach's statements were only "prison talk," and he had no intention of having Christine killed.

The jury returned a verdict of guilty. The jury also found the State's enhancement allegations of prior felony convictions to be true and assessed Beach's punishment at 55 years of imprisonment. The trial court ordered Beach to pay reimbursement costs and attorney's fees. Beach now appeals.

## DISCUSSION

### A. Voir Dire Limitation

In his first issue, Beach argues the trial court erred in sustaining the State's objection to his counsel's question during voir dire. In explaining the different burdens of proof, defense counsel asked: "But as a juror, if there's a conflict and you find yourself, man, I don't know which one to believe, has the Government met its burden?" Counsel for the State objected to this question as an improper commitment question, claiming defense counsel was trying to get the jurors to commit to a definition of "reasonable doubt." The trial court sustained the objection. Beach argues the trial court erred in sustaining the State's objection because that limited

5

his ability to question the potential jurors and violated his federal and state constitutional rights.

*Applicable Law*

We will assume, without deciding, that defense counsel's question was a proper voir dire question and thus the trial court abused its discretion by refusing the question. *E.g.*, *Sells v. State*, 121 S.W.3d 748, 755–56 (Tex. Crim. App. 2003) ("A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry."). Our next step is to conduct a harm analysis. *E.g.*, *Easley v. State*, 424 S.W.3d 535, 541–42 (Tex. Crim. App. 2014) (conducting harm analysis after concluding trial court erred in refusing proper voir dire question); *see also Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001) (explaining that appellate court is responsible for determining whether trial court's error resulted in harm).

Generally, any error that is not structural falls into two categories: constitutional error or non-constitutional error. *See* TEX. R. APP. P. 44.2(a), (b); *see also Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998) (explaining different categories of error). Constitutional error is one that directly offends a provision of the federal or state constitution. *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). We must reverse a conviction after finding this type of error unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). Non-

constitutional error is "[a]ny other error, defect, irregularity, or variance," such as a violation of a statute, and we must disregard this type of error if it "does not affect substantial rights." TEX. R. APP. P. 44.2(b). Substantial rights are affected when the error has a "substantial and injurious effect or influence" on the jury's verdict. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023).

Before *Easley v. State*, the Court of Criminal Appeals considered the right to question potential jurors in order to intelligently use peremptory challenges a constitutional right. *See, e.g.*, *Mathis v. State*, 576 S.W.2d 835, 836 (Tex. Crim. App. 1979) ("The right to be represented by counsel . . . encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his peremptory challenges."), *overruled by Easley*, 424 S.W.3d at 541; *Plair v. State*, 279 S.W. 267, 269 ( Tex. Crim. App. 1925) ("[T]he right to appear by counsel carries with it the right of counsel to interrogate each juror individually [to determine whether the defendant] should exercise a peremptory challenge to keep him off of the jury."), *overruled by Easley*, 424 S.W.3d at 541.

But the Court reconsidered this view in *Easley v. State* and concluded that earlier cases, like *Mathis v. State* and *Plair v. State*, incorrectly exalted the questioning of potential jurors and use of peremptory challenges above all other duties of counsel and most other types of error. *Easley*, 424 S.W.3d at 537–41. While acknowledging there could be an instance in which a trial court's limitation on voir

7

dire "is so substantial as to warrant labeling the error as constitutional error," the Court said that any erroneous limitation on voir dire was not per se a constitutional violation. *Id.* at 541. The error at issue in *Easley*—the same error we assume occurred here—was the trial court's prohibiting defense counsel from asking potential jurors a proper question. *Id.* The Court concluded this was a non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b), which requires a court to disregard any error that does not affect substantial rights. *Id.*; TEX. R. APP. P. 44.2(b).

Beach argues the trial court's refusal of his proper question in voir dire is constitutional harm requiring reversal, claiming that his federal and state constitutional rights to counsel include the right to question potential jurors and use his peremptory strikes intelligently. He relies solely on cases such as *Mathis* that held the right to question potential jurors was constitutional. But the Court in *Easley* overruled that view. *See Easley*, 424 S.W.3d at 541. Beach does not cite or acknowledge *Easley*, and each case Beach cites for his argument predates *Easley*. Beach does not state any other reason why this alleged error is of constitutional magnitude. Thus, we disagree with Beach's argument that this alleged error is constitutional, and we apply the conclusion adopted in *Easley* that generally, a trial court's error in refusing a proper voir dire question is a non-constitutional error subject to Rule 44.2(b) harm analysis. *See id.*; TEX. R. APP. P. 44.2(b).

In conducting Rule 44.2(b) harm analysis, we must determine whether the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). In making this determination, we consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error." *Easley*, 424 S.W.3d at 542 (quoting *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005)). The error does not affect substantial rights, and thus we need not reverse a conviction, if we have "a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (quoting *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)).

*Analysis*

In this case, the rest of the voir dire weighs against finding harm. *See Easley*, 424 S.W.3d at 542 (stating harm analysis includes consideration of voir dire). Although Beach argues the trial court erred in refusing his proper voir dire question, defense counsel asked substantially the same question after the trial court refused his first question.

9

The trial court sustained the State's objection to defense counsel's first question: "But as a juror, if there's a conflict and you find yourself, man, I don't know which one to believe, has the Government met its burden?"

Defense counsel then went on to ask: "So if you have a conflict of evidence, okay, you don't know the answer, as a juror you're allowed to say the Government didn't meet its burden of proof. Okay? Does everybody understand that?" The State did not object to this question. When a trial court erroneously refuses a proper voir dire question but then allows defense counsel to ask essentially the same question, any error is harmless. *See Woods v. State*, 152 S.W.3d 105, 110 (Tex. Crim. App. 2004).

Later, after emphasizing that reasonable doubt could come from the evidence itself, from conflicts in evidence, or from missing evidence, defense counsel asked: "So after hearing all of the evidence, you get back there and you say to yourself, I've heard all the evidence. I don't know. I don't know if he's guilty or not. Has the State met its burden of proof?" An unidentified potential juror responded: "No." Defense counsel acknowledged that response and said: "That's kind of an easy one, really. Not guilty." Considering the voir dire in its entirety, the alleged error here did not influence the jury and thus did not affect Beach's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Cook*, 665 S.W.3d at 599; *Macedo*, 629 S.W.3d at 240.

Further, there was significant, uncontroverted evidence from which the jury could find Beach guilty. *See Easley*, 424 S.W.3d at 542 (stating harm analysis includes consideration of nature of evidence supporting verdict). The jury heard the recording in which Beach asked O'Day to shoot Christine and said he would give O'Day a truck for doing so. Thus, there was strong evidence supporting the jury's verdict.

Assuming the trial court erred in refusing Beach's proper voir dire question, any error was non-constitutional, did not affect Beach's substantial rights, and was therefore harmless. *See* TEX. R. APP. P. 44.2(b); *Easley*, 424 S.W.3d at 541–42. We overrule Beach's first issue.

## B. Entrapment Instruction

In his next issue, Beach argues the trial court erred in denying his requested jury instruction on entrapment.

*Applicable Law*

Entrapment is "a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." TEX. PENAL CODE § 8.06(a). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.*

11

A defendant is entitled to an instruction on a properly requested defense supported by the evidence. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). A defense is supported by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw*, 243 S.W.3d at 657–58. In other words, a defense is supported if there is evidence in the record making a prima facie case for the defense, even if the evidence is weak or contradicted. *Id.*

To be entitled to an instruction on entrapment, the defendant has the burden of producing a prima facie case of all of the elements of the entrapment defense, which are: (1) "he engaged in the conduct charged"; (2) "because he was induced to do so by a law enforcement agent";[2] (3) "who used persuasion or other means"; and (4) "those means were likely to cause persons to commit the offense." *Hernandez v. State*, 161 S.W.3d 491, 497 (Tex. Crim. App. 2005).

The entrapment defense includes both subjective and objective components. *Id.* at 497 n.11. The subjective component requires evidence that the defendant "was actually induced to commit the charged offense by the persuasiveness of the police

---

[2] A "law enforcement agent" in the context of entrapment includes "any person acting in accordance with instructions" from federal, state, or local law enforcement agency personnel. TEX. PENAL CODE § 8.06(b). Thus, O'Day, who was acting in accordance with instructions from prison officials, was a law enforcement agent in this context.

conduct." *Id.* (quoting *England v. State*, 887 S.W.2d 902, 913 n.10 (Tex. Crim. App. 1994)). The objective component asks "whether the persuasion was such as to cause an ordinarily law-abiding person of average resistance nevertheless to commit the offense." *Id.* (quoting *England*, 887 S.W.2d at 914). Impermissible persuasion includes "pleas based on extreme need, sympathy, pity, or close personal friendship, offers of inordinate sums of money, and other methods of persuasion that are likely to cause the otherwise unwilling person—rather than the ready, willing and anxious person—to commit an offense." *Id.* "[W]here the facts only indicate that the criminal design originates in the mind of the accused and the law enforcement officials or their agents merely furnish opportunity for or aid the accused in the commission of the crime," the evidence does not support an instruction on entrapment. *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994).

Whether a defense is supported by the evidence is a question of law we review de novo. *See Shaw*, 243 S.W.3d at 658. If the evidence does not support a particular defense, the trial court does not err in refusing the requested instruction. *Muniz*, 851 S.W.2d at 254.

## *Analysis*

Beach argues the evidence supports an entrapment instruction because without the involvement of prison officials, the recorded conversation would not have occurred. O'Day agreed when he testified that if the prison officials had not put

13

him up to it, the conversation between Beach and himself would not have occurred. But entrapment entails a law enforcement agent's use of persuasion or other means to cause a person to commit an offense. *See* TEX. PENAL CODE § 8.06(a). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.*

Beach does not identify in the record any persuasion by law enforcement or O'Day. He argues the prison "atmosphere of self-preservation" created persuasion, claiming that O'Day only told prison officials about Beach's plan to have Christine killed after O'Day was caught sending a letter to Christine. Beach argues that O'Day turned Beach in to help himself and protect his eligibility for parole. O'Day worked with prison officials, Beach argues, to initiate their conversation and record him making incriminating statements for the sole purpose of entrapment. But again, "merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id.* Even if Beach's theory is correct that O'Day only turned Beach in to protect his own eligibility for parole, this does not show that O'Day or prison officials persuaded Beach to engage in criminal conduct.

In the recorded conversation, after describing the ways in which he was trying to "demolish" Christine through multiple civil and criminal lawsuits, it was Beach who brought up the plan for O'Day to shoot Christine. This indicates the criminal plan originated in his mind and the recorded conversation merely furnished an

14

opportunity for him to commit the crime of solicitation. *See Reese*, 877 S.W.2d at 333. O'Day made no pleas based on extreme need, sympathy, pity, or close personal friendship, or offers of inordinate sums of money, for example. *See Hernandez*, 161 S.W.3d at 497 n.11. Thus, the recording does not show any persuasion by O'Day or prison officials.

Beach has not identified, nor do we think the record shows, any evidence that Beach was induced to solicit the murder of his wife by a law enforcement agent, that the agent used persuasion or other means, or that those means were likely to cause a person to commit the offense. *See id.* at 497 (stating that to be entitled to entrapment instruction, defendant must produce prima facie case of each element of entrapment defense). The only element of entrapment supported by evidence is that Beach engaged in the charged conduct. *See id.* (listing elements of entrapment defense). Therefore, the trial court did not err in denying Beach's request for an entrapment instruction. We overrule Beach's second issue.

## C.    Enhancement Allegations of Prior Convictions

In his next issue, Beach argues that during the punishment phase of trial, the trial court erred in admitting evidence of Beach's prior convictions because the evidence does not show that Beach's guilty pleas resulting in those convictions were knowingly and voluntarily made, and thus there is no evidence that he validly waived

15

his right to a jury trial guaranteed by the Sixth Amendment of the federal constitution.

*Applicable Law*

Generally, to raise an issue on appeal, the appellant must have preserved error in the trial court. *See* TEX. R. APP. P. 33.1; *Rios v. State*, 665 S.W.3d 467, 476 (Tex. Crim. App. 2022). To preserve error in the trial court, the record must show that: (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Joyner v. State*, 548 S.W.3d 731, 734 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The complaining party must let the trial court know what he wants and why he is entitled to it and do so clearly enough for the trial court to understand. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

A claim of error on appeal must comport with the complaint made at trial or the error is waived. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena*, 285 S.W.3d at 464 ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

*Analysis*

During the punishment phase of trial, the State offered Beach's criminal records from the California Department of Corrections and Rehabilitation. The records showed Beach had previously been convicted and imprisoned in California for the felony offenses of sexual assault and escape. A fingerprint expert confirmed that the fingerprints attached to the prior judgments of conviction matched Beach's fingerprints.

Defense counsel objected to the records as hearsay and as violating the confrontation clause of the Sixth Amendment to the United States Constitution and of Article 1 Section 10 of the Texas Constitution. When the State offered the criminal records, defense counsel said:

> Object to hearsay. . . . I have additional objections besides hearsay, also. . . . Confrontation clause. This is clearly an item that was marked and made in a criminal investigation, criminal resolution, the whole criminal process. I have the right to confront anybody who took those fingerprints, made that document. While the business record affidavit may provide some authentication, it still does not satisfy the Sixth Amendment of the United States Constitution, the Texas Constitution, both of their rights to confrontation clauses. So in addition to the hearsay, the confrontation clause is really more appropriate—[.]

At that point, the trial court cut him off and overruled his objections. The trial court then admitted the criminal records. The jury found the enhancement allegations of Beach's prior convictions to be "true."

17

The record in this case shows Beach did not raise the violation of his federal Sixth Amendment right to a jury trial that he now asserts on appeal. Beach concedes that the objection his counsel made in the trial court does not match his complaint on appeal. Therefore, the error is waived. *See Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92; *Pena*, 285 S.W.3d at 464.

He argues, however, that he did not need to object in the trial court because the evidence of his prior convictions implicates his Sixth Amendment right to a jury trial under the federal constitution. The prior convictions did not show on their face, he argues, that he knowingly and voluntarily waived his right to a jury trial; instead, the records are silent. Denial of the right to a jury trial is an issue a defendant may raise for the first time on direct appeal. *Rios*, 665 S.W.3d at 477 (stating appellant can argue for first time *on direct appeal* that he was denied constitutional right to jury trial); *see also Samudio v. State*, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983) ("[W]aiver of jury can never be presumed from a silent record, *at least on direct appeal*." (emphasis added)). But this is not a direct appeal of those prior convictions.

Instead, Beach seeks to collaterally attack these prior convictions. In the trial court, a defendant may collaterally attack a prior conviction if the conviction is void or "tainted by a constitutional defect." *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. [Panel Op.] 1979). But the burden is on the party attacking the prior conviction to offer evidence showing its invalidity and to preserve error. *West v.*

18

*State*, 720 S.W.2d 511, 519 (Tex. Crim. App. 1986); *Sparks v. State*, 809 S.W.2d 773, 774 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Because this is not a direct appeal of the prior convictions in which the right to jury trial is implicated, Beach was still required to raise his objection in the trial court to preserve error on appeal. *See Sparks*, 809 S.W.2d at 774. Even if he had preserved error, simply pointing out that prior convictions, on their face, do not show a knowing and voluntary waiver of a jury trial is not enough to meet the burden to show their invalidity. *See West*, 720 S.W.2d at 518–19 (holding defendant did not meet his burden to show prior convictions' invalidity by relying on fact that incomplete records were silent as to waiver of right to jury trial).

We therefore overrule Beach's third issue because he did not preserve error.

## D.  Attorney's Fees

Lastly, Beach argues the trial court erred in ordering him to pay reimbursement costs and attorney's fees despite his indigence.

*Applicable Law*

A trial court may order a defendant to pay all or part of the costs of court-appointed legal services that the court finds the defendant is able to pay. TEX. CODE CRIM. PROC. art. 26.05(g); *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering

19

reimbursement of costs and fees." *Cates*, 402 S.W.3d at 251 (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). But if the trial court has previously determined the defendant is indigent, he is presumed to remain indigent for the rest of the proceedings unless there is a material change in his financial circumstances. TEX. CODE CRIM. PROC. art. 26.04(p). The record must include the trial court's finding that the defendant's financial circumstances have changed to support an order to pay attorney's fees after a finding of indigence. *See Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013).

*Analysis*

On January 16, 2019, the trial court determined Beach was indigent and appointed counsel to represent him. In a docket sheet entry dated August 26, 2022—after trial but before the final judgment—the trial court noted that Beach's "indigent status continues [and] waives all costs." In the judgment of conviction, entered on August 30, 2022, the trial court ordered Beach to pay $495 in reimbursement costs and $20,875 in attorney's fees. However, the record does not include any finding that Beach's financial circumstances had changed. *See Wiley*, 410 S.W.3d at 317. Therefore, the trial court erred in ordering Beach to pay these costs and fees.

The State agrees with Beach that the trial court erred in ordering him to pay reimbursement costs and attorney's fees, and the State agrees that we should modify the judgment of conviction to delete the reimbursement costs and attorney's fees.

20

Accordingly, we sustain Beach's fourth issue and modify the judgment of conviction to delete the assessment of $495 in reimbursement fees and $20,875 in attorney's fees. *See Cates*, 402 S.W.3d at 252 (modifying judgment to delete attorney's fees after defendant was erroneously ordered to pay fees).

## CONCLUSION

We modify the trial court's judgment of conviction to delete the assessment of $495 in reimbursement fees and $20,875 in attorney's fees. We affirm the judgment as modified.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).